H. J. O'BRIEN, Administrator, Appellant, v. GEORGE A. BIEGGER, Appellee.

No. 46235.

OCTOBER 19, 1943.

William P. Housel, of Humboldt, for appellant.

C. W. Garfield and Melvin L. Baker, both of Humboldt, for appellee.

BLISS, J.—■ Plaintiff is a son of the deceased, by an earlier marriage, and is her only heir. He is also the administrator of her estate. The defendant is the surviving spouse of the deceased.

In his petition plaintiff alleged that: On April 26, 1940, decedent deposited in a savings account (No. 1217) in a Humboldt bank, the sum of $5,000, which she had received from her father's estate; the deposit was made and the record in the bank was kept under the heading "Mrs. G. A. Biegger or G. A. Biegger"; the account bore interest, and no withdrawals were made except the sum of $500 on December 6, 1940; after the death of Mrs. Biegger, the defendant, by various withdrawals, came into the possession of the entire balance in the account, which money he claimed became his property upon the death of his wife. Plaintiff prayed judgment for $4,643.15.

Defendant filed a single pleading in three divisions, designated an "Answer, Counterclaim and Cross Petition." In the first division he admitted the allegations above stated except that he alleged the deposit was made jointly by his wife and himself, and that, pursuant to section 9267 of the Code of Iowa, the withdrawals from said account were rightfully paid to him by the bank. In division 2, he alleged that on February 13, 1936, from his own funds, he deposited in said bank, in a savings account (No. 807), under the names and heading of "Mr. or Mrs. Geo. A. Biegger," the sum of $2,500, which deposit account he increased until it amounted to the sum of $3,151.02 on April 26, 1940; it was orally agreed by him and his wife and the bank that said account, No. 807, should be payable to either of them, during their respective lives, upon presentment of the passbook, and, upon the decease of either of them, to the survivor; the said account so opened and maintained was con-

tinued to the death of his wife. In the second division it was further alleged that upon the opening of the second deposit account, No. 1217, it was orally agreed that, in consideration of the opening and maintenance of account No. 807 by defendant, account No. 1217 should be maintained in the same manner as account No. 807, and that both accounts should be payable to either of them with the right of withdrawal on either or both of said accounts upon the presentment of the proper passbook, and that upon the death of either of them the entire balance in both accounts would be the sole property of, and payable to, the survivor; that such was the intention and understanding of the defendant and his wife and the bank; that the $5,000 deposited in account No. 1217 would have been deposited in account No. 807, except that the resulting excess of the deposit over $5,000 might not have been within the protection and coverage of the Federal Deposit Insurance Act [12 U. S. C., section 264]; that in reliance upon the making of deposit account No. 1217 he permitted account No. 807 to remain as opened. He also alleged that both passbooks were available at all times to both him and his wife until her departure for California in November 1940, and that from that time on they were in his exclusive possession and control. He prayed that the bank record of account No. 1217 be reformed so as to show that any balance was payable to the survivor, and that the said account be decreed to have been a joint deposit payable to the survivor, and rightly paid to the defendant as the survivor.

Division 3 was a counterclaim for $404.94, for money expended in the last sickness and burial of his wife. He asked judgment thereon only in the event he was denied recovery on division 2.

In his reply the plaintiff denied all allegations in each division of defendant's answer, cross-petition, and counterclaim, and alleged therein that the decedent was in poor health for some years before her death, and because thereof, and because of her lack of business experience, she relied upon the defendant to look after her property, and that whatever he did with respect to deposit account No. 1217 he did as the agent of the decedent. It was also alleged in the reply that it was Mrs. Biegger's intention, upon her death, that H. J. O'Brien, as her

only son, would receive, as his own property, two thirds of any balance in said account No. 1217.

It was stipulated that the $5,000 deposited in account No. 1217 was Mrs. Biegger's own property which she received from her father's estate. It appears without dispute that the defendant and his wife, after their marriage in 1930, first lived in town and then moved to the state of Oregon for her health, and later they returned to Iowa and operated an eighty-acre farm near Luverne. On November 18, 1940, Mrs. Biegger, because of ill health, again went to San Francisco, and died there in a Christian Science Sanatorium on December 26, 1940.

Neither of the deposit accounts was used as a checking account, and prior to Mrs. Biegger's death such withdrawals as were made were soon replaced. Mrs. Biegger had a checking account in the Livermore State Bank, in which there was a balance of $215.08 on December 30, 1940, just after her death. At the time of her death there was a balance of $3,714.35 in account No. 807, and $4,451.67 in account No. 1217.

The court in its opinion made findings substantially as alleged in the defendant's pleading. It found that the conduct of the decedent, in the manner of making the deposits, in their maintenance as made, in her failure to make a will, her leaving of the passbooks in the possession of the defendant on her last trip to California to enter the sanatorium, the testimony of two disinterested bank officials, justified its conclusion and decree that the decedent intended to create a right of survivorship in account No. 1217 in whichever party survived the other, whether the defendant's right to and ownership of the property be based upon the theory of a gift inter vivos to him or upon the theory of a contract, partly oral and partly in writing, entered into by the decedent, the defendant, and the bank.

These findings and conclusions of the trial court, in whose presence the testimony was given, are entitled to our serious consideration, but, as said by Justice Gaynor, in Steen v. Steen, 169 Iowa 264, 267, 151 N. W. 115, 116:

"This case is triable de novo here, and it is our duty to review the entire record and exclude from our consideration all evidence that is not competent and relevant to the issue ten-

dered, and all evidence that comes from the lips of witnesses who were incompetent to deliver it.''

There is no testimonial contradiction to any item of testimony given. Our duty is to pass upon its competency and its probative value in the establishment of the pleaded allegations and the contentions urged by the respective parties.

It appears, from the testimony of the bank's assistant cashier, that when account No. 807 was opened in February 1936, Mr. and Mrs. Biegger came into the bank, and to the counter window of the witness, to discuss the matter of making a deposit. The passbook and the bank's ledger sheet of the account show that the amount deposited was $2,500. Defendant testified that it was his money. Plaintiff testified that his mother had no property except what she later received from her father's estate. On being asked whether at this time he had any talk with Mr. and Mrs. Biegger about what would happen in the event of the death of either, and to tell the court about it, the witness answered that there was such a talk, and that:

''It was the understanding when that account was made, that is 807, that it would be made in the two names, jointly, that is 'G. A. Biegger or Mrs. G. A. Biegger,' with the understanding if either of them should pass away that the funds in the account would pass to the other party—the surviving party —and in that way do away with necessity of going through court to establish their title to it.''

Plaintiff objected to the testimony as an opinion and conclusion which the witness was not competent to give. This record was then made:

''Q. You say, Harry, that was the understanding. Tell us the substance of the talk. A. As I now recall it, Mr. and Mrs. Biegger were at my window, closer than Mr. Grier [the court reporter] is now, and discussed this account that they proposed to open, No. 807. And asked, in case it was put in the two names, as it ultimately transpired it was, if that would protect them in case of the death of either party, and I assured them it would.''

On cross-examination this witness testified that:

"When account number 807 was opened, in February, 1936, Mr. Biegger instructed the witness that the account was payable to another person than himself and Mrs. Biegger was then present, and the account retained its original name up to the death of Mrs. Biegger."

On redirect examination, this is the record:

"Q. Harry, what was said by Mr. Biegger and Mrs. Biegger, or either of them, on the very day that the 'Mr. or Mrs. G. A. Biegger' account, number 807, was opened, as to who it was payable to, whether one or the other or both of them? A. As I recall it, the matter was discussed whether or not the opening of the account, or the deposit in the two names 'Mr. or Mrs.,' that in case one party passed away that the funds would automatically become the property of the other party."

The witness also told them that "it would be a joint account, with the funds passing to the survivor. They said that is the information they wanted."

Is there anything unusual, unreasonable, or unbelievable about this narration of what took place? According to the son's testimony, his mother had no property. She, certainly, could lose nothing by the arrangement. It was all to her advantage. So far as the record discloses, the defendant had no one more entitled to his bounty than his wife. That he was sincere in his intentions appears from the fact that for almost five years, and until Mrs. Biegger died, the account was maintained in the same way, except that it was augmented by accrued interest and additions to the principal by the defendant until it amounted to in excess of $3,700 on her death. It is the sole purpose of a court trial to ascertain the right solution of the litigated controversy, insofar as it is possible under the substantive law and the rules of evidence and procedure. Death has closed the lips of Mrs. Biegger, and Code section 11257 forbids the defendant to speak of the personal communications and personal transactions between them respecting the making and maintaining of deposit account No. 807. But, can there be any fair question or reasonable contention as to just what took place and as to the real transaction at that bank window on Feb-

ruary 13, 1936, between Mr. and Mrs. Biegger and the bank? We have the direct testimony of the assistant cashier, which is unimpeached, and is fully corroborated by the bank records themselves. The plaintiff brought out on cross-examination that Mr. Biegger instructed the assistant cashier that the account was payable to another person than himself. That other person was Mrs. Biegger, who was there present. We have no evidence of what she said, if anything, but it may be fairly presumed that she acquiesced, as the deposit as made was all to her advantage. Under Code section 9267, "a deposit * * * payable to either, or payable to either or the survivor * * * or any part thereof, or interest or dividend thereon, may be paid to either of said persons whether the other be living or not * * *." In the three-party discussion the assistant cashier, in reply to a question, told the Bieggers that in case one of them passed away the funds would automatically become the property of the other—that it would be a joint account, with the funds passing to the survivor. The Bieggers then said: "That is the information we want." Immediately the money was deposited and the joint account was opened. We are entitled, and it is our duty, to accept all reasonable inferences deducible from the proven acts of these people on this occasion. It is a trite, but true, saying, that "actions speak louder than words." It is our clear judgment, fully supported by the record, that deposit account No. 807 was opened and maintained by Mr. and Mrs. Biegger as a joint account, payable to either while living and to the survivor, as his or her absolute property, upon the death of the other. No other reasonable conclusion suggests itself to us.

On April 26, 1940, Mr. and Mrs. Biegger again came into the bank to make a deposit of the $5,000 which she had received from her father's estate. This time they came to the teller's window, according to the latter's testimony. He testified that "they had the pass book for account 807, entitled 'Mr. or Mrs. George A. Biegger,'" and said they wanted to deposit $5,000 in that account. He heard them discussing whether the excess over $5,000 which would result from this deposit in account No. 807 would be covered by insurance under the federal deposit-insurance statute. The witness referred them to the assistant

cashier for information on this point. The latter testified that the balance was in excess of $3,000 in account No. 807 on that day, and that the Bieggers said they intended to deposit $5,000 in that account. He testified:

"I don't remember which one said that. They were both in there together. I imagine George did most of the talking. He would turn to Mrs. Biegger and ask her, and she would nod her head. They were both right in front of my window. Mr. Biegger raised the question that they would not be protected beyond the $5,000 limit under the Federal Deposit Insurance, and whether or not, by making a new account and calling it 'Mrs. G. A. Biegger or G. A. Biegger,' as we then had 'G. A. Biegger and Mrs. G. A. Biegger,' in account number 807, that in that way they would get an additional $5,000 protection. That was the purpose of starting this account, number 1217. That is what they said and what the discussion was about. I told them it was my opinion if it were put into a separate account, labelled as he suggested, it probably would afford this protection. They talked that over between themselves and in my presence, and that is what was done. They said nothing in my presence about the right of either to draw upon the account and nothing about the survivor, in event of death."

He also testified that it was his intention and the bank's understanding that both accounts would be handled in the same way and that the funds would belong to the survivor. Plaintiff objected to the question calling for this answer as being a conclusion and not binding on the parties and irrelevant and immaterial.

The Bieggers, after this conversation with the assistant cashier, went back to the teller's window, and, as he testified, he completed the deposit. He further testified:

"That they said they wanted the account handled the same way, in regard to payment, as account 807, so in the event one died the account would go to the survivor. That this was specifically talked about, but he did not remember which one said it. That it was the witness' understanding, on the part of the bank, that on the death of either Mr. or Mrs. Biegger the $5,000

account would be the property of the one surviving. That such was the bank's intention in receiving the account. That he told them that would be the case.''

A sister of the defendant testified that in the summer of 1939, after the death of Mrs. Biegger's father, Mrs. Biegger told her, in a discussion of their respective bank accounts, that when she would get her share from her father's estate she would put the same trust in her husband in her account that he put in her. There is nothing strange or unreasonable in her maintaining account No. 1217 as he had maintained account No. 807. He had trusted her under an arrangement which was much in her favor. After she received her inheritance she told the witness that things were arranged satisfactorily to her and George as to their account, or their money. The assistant cashier testified that ordinarily the passbook must be presented in connection with a withdrawal, and both he and the teller testified either of the Bieggers could have made withdrawals from either account at any time, and the assistant cashier testified that Mr. Biegger instructed him that account No. 807 was payable to another, who was Mrs. Biegger. The defendant, without objection, testified that before his wife left for California he had possession of the passbook for account No. 1217, and had possession of both passbooks at all times thereafter, and that his wife had access to the passbook to account No. 807 previous to her going to California. No objection was made by the plaintiff to any of the testimony heretofore referred to, except as noted. Over the objection that he was incompetent under section 11257, and the testimony incompetent, irrelevant, and immaterial, the defendant testified that after making the deposit in account No. 1217 he walked out of the bank with both passbooks; it was his intention that each had the privilege of drawing from both accounts and that any balances would belong to the survivor, and that if it had not been so he would not have maintained account No. 807 as he did after the opening of account No. 1217; on December 6, 1940, he had the bank transfer $500 from account No. 1217 to account No. 807, and on the same day he deposited $500 of his own money in his wife's checking account in the Luverne bank. Had this not been done, this account would have

been overdrawn by the withdrawals therefrom. The ledger 'sheets and the passbooks show these entries.

I. While the appellee's answer et al., as amended, expressly pleads a right to the property on the basis of a contract between his wife, himself, and the bank, he also contends that this right is implicit in the allegations of the pleading on the theory of a gift, or of joint tenancy. Appellant argues that no agreement was established that either Mr. or Mrs. Biegger was to take and own absolutely any balance in either account upon the death of the other. He also argues that if such an agreement was made it was without valid consideration. Appellee concedes, and it is the holding of this court and of courts generally, that an agreement between two persons for a joint deposit payable to either or the survivor does not always, in itself, establish that the survivor is to take any balance as his own property. That depends upon the intent of the parties. Such an arrangement may be made only for the convenience of the parties, as we held in Sinift v. Sinift, 229 Iowa 56, 293 N. W. 841. The reasons for such an arrangement may be various. It may be to pay family bills, or to transact business for the one whose money is deposited, or for other temporary purposes. But, of course, it may be, and we believe most often is, for the purpose of vesting title and ownership of the property in the survivor. It is intended as the final disposition of the remaining property. It is a common and a most worthy arrangement, particularly between those related by blood or marriage, that each shall draw upon the account for their mutual needs or pleasure while they live, and that the one who survives shall take and use it for the same purposes or as he or she may desire. The purpose, desirability, and need for these arrangements are aptly stated by the Oregon court in the case of In re Edwards' Estate, infra, 140 Or. 431, 435, 14 P. 2d 274, 276, in these words:

"The increasing use of joint bank accounts makes the problem before us one of general importance. The fact that upon the death of the husband a sum is at once available to discharge the expenses of the last illness and provide for household necessities, without court proceedings, has won for such accounts

1190

increasing favor. *In fact, these accounts are regarded by people in modest circumstances as a poor man's will."* (Italics ours.)'

The assistant cashier testified that after it had been discussed by himself and the Bieggers at the counter window —Biegger doing most of the talking on the outside of the counter, but addressing his remarks to his wife and she nodding her head—it was the "understanding" that the deposit would be made as it was made, and that "if either of them should pass away that the funds in the account would pass to the other party—the surviving party—*and in that way do away with the necessity of going through court to establish their title to it."* (Italics supplied.) His use of the word "understanding" may have been an opinion and a conclusion. But are we to cast it aside for that reason when it expresses the very essence of what he saw and heard taking place before him and of which he was a part? Is there any reason to doubt that his conclusion was based upon what actually took place, and as appears in this record? The veracity of the two witnesses from the bank is in no way questioned. It is a well-known rule that a lay witness may give an opinion when the circumstances are such that it is impracticable to state all of the details of what he saw and heard. And a conclusion is not to be discarded when it appears from testimony as to facts—what was said and done—that it has support based upon reason and substance. It is not reasonable to suppose that the assistant cashier and the teller, as witnesses almost two years after the occurrence, could detail just what each of the Bieggers said and did, but it is not unreasonable or incredible that they should have definite recollection of what Mr. and Mrs. Biegger in fact intended and did.

The courts have never been reluctant to uphold agreements of this kind where there is a family relation, and particularly between husband and wife. As said by the New Mexico court, in Menger v. Otero County State Bank, infra, 44 N. M. 82, 88, 98 P. 2d 834, 838:

"The purpose to create a joint deposit is particularly apparent where the deposit is made by husband or wife. The intent to create survivorship rights is more easily found under such circumstances than under any other. See West v. McCullough,

123 App. Div. 846, 108 N. Y. S. 493, 496, affirmed in 194 N. Y. 518, 87 N. E. 1130; In re Reynolds' Estate, Sur., 163 N. Y. S. 803.''

While one of the purposes of enacting legislation such as is found in Code section 9267 was largely for the protection of the banks, Zollman, in volume 5 of his work on Banks and Banking (1936 Edition), section 3227, states:

''One great purpose in creating joint deposits, particularly in connection with savings banks, is to create a survivorship in the surviving depositor and eliminate the necessity of formal probate proceedings.''

The appellant's position is that the record does not sustain the decree on any theory. In his argument to this court he discusses contract, joint tenancy, and gifts, both causa mortis and inter vivos. Apparently it was thus presented to the trial court, for it is stated in its opinion, preliminary to decree, that:

''I think this conclusion is supported by the record under either the theory of gift *inter vivos* or under the theory that a contract was entered into between the parties named in the deposit and the Humboldt Trust & Savings Bank.''

The able trial court heard the witnesses and found that the agreement had been made. We have earnestly studied the record and have reached the same conclusion. We pass now to the appellant's contention that there was no legal consideration for any contract that may have been agreed upon. We will first discuss the matter of consideration for the tripartite contract between the Bieggers and the bank. In Division II we discuss consideration for the agreement between the Bieggers.

It appears to us that the name which is given to the transaction, or to the means, or to the form used in accomplishing it, is not important. The thought, concurred in by many courts and other authorities, is well expressed in 3 R. C. L., Banks, 527, section 155, as follows:

''It is well established that a bank account may be so fixed that two persons shall be joint owners thereof during their

mutual lives, and the survivor take the whole on the death of the other. In creating a joint bank account with right of survivorship, it is a matter of no importance that the particular terms 'joint ownership' and 'joint account' are not used; the controlling question is whether the person opening the account intentionally and intelligently created a condition embracing the essential elements of joint ownership and survivorship. No particular formula is required, and courts will be controlled by the substance of the transaction rather than by the name given it."

As said in 5 Michie, Banks and Banking, 99, 101, section 46:

"The controlling question involved is the intention of the parties making the deposit, and not its mere form."

For expressions of the same thought, see In re Estate of Winkler, 232 Iowa 930, 5 N. W. 2d 153, 155; Sinift v. Sinift, supra, 229 Iowa 56, 84, 85, 90, 293 N. W. 841; 14 Am. Jur., Cotenancy, 81, 83, section 11; 7 Am. Jur., Banks, 299 et seq., sections 425–441; 9 C. J. S., Banks and Banking, 595 et seq., section 286; Holt v. Bayles, 85 Utah 364, 39 P. 2d 715, 717; Kelly v. Beers, 194 N. Y. 49, 86 N. E. 980, 128 Am. St. Rep. 543; Wallace v. Riley, 23 Cal. App. 2d 669, 74 P. 2d 800; Sage v. Flueck, 132 Ohio St. 377, 7 N. E. 2d 802, 803; Menger v. Otero County State Bank, supra, 44 N. M. 82, 98 P. 2d 834, 837.

It is stated in Hollingsworth v. Hollingsworth, 212 Iowa 1165, 1167, 235 N. W. 726, 727, after naming some of the different theories developed, "we have not definitely tied ourselves to any one of these particular theories." Neither have we rejected any of them. In that case we held the survivor was entitled to the balance in the joint deposit, because she had never parted with, or agreed to part with, title to the funds. In Belgard v. Belgard, 202 Iowa 1356, 1357, 212 N. M. 116, we upheld a gift inter vivos of a joint savings account to the credit of the husband or wife, to which the latter had contributed no funds. The survivor was the wife and the decision was based on a symbolical delivery of the deposit, by a delivery of the passbook. In In re Estate of Hanson, 205 Iowa 766, 767, 218 N. W. 308, 309, the savings deposit was "In account with Mrs. L. P.

Hanson or in case of her death payable to Clara L. Paul.'' The deposit was made by Mrs. Hanson. The signature of each was necessary to a withdrawal. A gift causa mortis to Mrs. Paul was upheld. The court held that the delivery of the passbook by Mrs. Hanson to a third person completed the gift. The court held that the evidence would also support a gift inter vivos. In Andrew v. Citizens State Bank, 205 Iowa 237, 216 N. W. 12, we held that a mother who deposited $2,000 and received a certificate "payable to the order of self or Hazel Pent, daughter,'' and who died in the possession thereof, and so far as the record shows the certificate was never delivered to the daughter, intended to and did make a gift of the deposit to the daughter. There was no evidence of intention other than the form of the certificate, and the fact that the certificate remained unpaid and unchanged. This was held sufficient to sustain the gift. In Eaton v. Blood, 201 Iowa 834, 840, 208 N. W. 508, 511, 44 A. L. R. 1516, in speaking of and upholding a gift inter vivos of a savings account and securities which had never been delivered to the donee, we said:

"It is not essential to the validity of a gift that the donor relinquish all authority, or even all interest in the subject of it."

In Abegg v. Hirst, 144 Iowa 196, 122 N. W. 838, 138 Am. St. Rep. 285, we held that a husband who purchased a mortgage with his own money and took an assignment thereof to himself and wife, and held possession thereof until his death, without knowledge thereof by his wife, had made a gift of one half of the mortgage to her. In Taylor v. Grimes, 223 Iowa 821, 826, 273 N. W. 898, 901, the decision could well have been based upon the ground that there was no joint deposit, since the record clearly showed that Grimes merely had authority to draw checks on the account for the benefit of the depositor. The following statement appears in the opinion, to wit:

"The rule in this state is, as established by the above cases, that where a deposit is made in the name of the depositor and another the rule as to gifts applies, and the depositor must not only have the present intention to make a gift but also divest himself of all control and dominion over the subject of the gift.' As stated in the case of In re Brown's Estate, supra, 113 Iowa

351, on page 354, 85 N. W. 617, 618: 'Each still had the right to draw the money. In order to constitute a gift, there must be an actual transfer by the donor of all right and dominion over the thing given.' "

There was a similar holding in the first opinion in Sinift v. Sinift, 284 N. W. 91, on which rehearing was granted and the opinion in 229 Iowa 56, 293 N. W. 841, was substituted, and the case decided upon the factual finding that there was no intention that the wife should take as survivor.

Such a rule quite effectively hampers one who might wish to make a gift of an interest in a joint deposit account by making the donee a joint payee of the deposit while still retaining the right to draw upon the account himself. The correct conception of the underlying principles in such situations is expressed by the Wisconsin court in Estate of Staver, 218 Wis. 114, 119, 260 N. W. 655, 657, as follows:

"Upon this question there is conflict and confusion in the authorities. Under a number of decisions it has been held that in such a situation the transaction fails to meet the requirements of a trust because of the lack of intention to create a trust, and that it fails to constitute a gift because there has been no delivery of the certificates. As a matter of legal principle, there seems to be no escape from the conclusion that under the state of facts, the question is not one of transfer at all. The situation is in no way analogous to the transfer of an article of personal property or of an existing chose in action. In the latter cases courts are dealing with an item of specific property or a fully created chose in action. The property or the chose is by assumption in the hands of the donor, and, in order that the title and ownership may come to the donee in such a manner as to constitute a perfected gift, there must be a delivery. In case of joint bank accounts evidenced by certificates of deposit, the chose in action or contract claimed against the bank is at the outset created not only in the depositor but in the person whom he designates as joint payee or owner of the deposit. The delivery of the certificates or passbook which gives vitality and existence to the chose in action must create a legal interest and ownership both in the depositor and the third person directly. No ques-

tion of transfer from the depositor to the intended donee is in any manner involved. The instrument in legal contemplation vests ownership in a chose in action according to its terms. The joint interest is perfected by the initial delivery, and no further transfer is required by the depositor.''

In that case the testator, Joseph Staver, at his death held certificates of deposit payable to Joseph Staver or Frank J. Staver. The certificates were also bequeathed to the survivor, but the court held he took by right of survivorship by virtue of the contract of deposit rather than under the will.

This court has never passed upon the proposition, contended for by the appellee, that a right of survivorship in a joint deposit account may be created by the contract of deposit itself. We flirted with the question in the case of In re Fenton's Estate, 182 Iowa 346, 355, 165 N. W. 463, 465, but did not decide it. There Mrs. Fenton furnished the money for the deposit, under a memorandum agreement with the savings bank that the deposit was the common property of herself and Finus Lewis, signers of the agreement, and that any balance in the account should be paid to the survivor on the death of either. The court found there was a gift inter vivos to the surviving donee, but it said:

''The joint account and the joint execution of the paper delivered to the bank in connection therewith present a case of a three-sided contract. If it were binding on one, was it not binding on all? The very fact that the bank assumed a liability to the survivor of the joint depositors was in itself in the nature of a consideration for the agreement of Mrs. Fenton that the survivor should take the funds. It is an interesting question with us whether the joint agreement was not, of itself, sufficient to pass the title of the funds to the survivor at the death of Mrs. Fenton. We pass that question, however.''

The question again came up in Miller v. Williams, 195 Iowa 1305, 1307, 192 N. W. 798, 799. Justice Evans again wrote the opinion, saying:

''If the paper under consideration had been a mere written promise by Miller to Mrs. Williams, without consideration, it would doubtless be ineffective, either as a bequest or as a gift.

But the paper is something more than this. It is a contract with a third party, by which such third party has bound itself to Mrs. Williams, as the owner of such certificates, in the event of her survival of Miller. See Meyer v. Stortenbecker, 184 Iowa 441. In the case of In re Fenton's Estate, 182 Iowa 346, we gave some consideration to this question, without directly passing upon it. In view of our conclusion herein on the question of actual delivery, we have no occasion to give consideration to this question.''

■ The question is again put directly to the court in this case. We think it should be answered, and answered in the affirmative, that is, that the deposit made by the appellee in account No. 807 was not only consideration for paying him but was also consideration for paying Mrs. Biegger, and that the deposit by Mrs. Biegger in account No. 1217 was consideration for the bank's agreement to pay either her or her husband or the survivor. The making of these deposits created a debtor-creditor relation between the bank and the Bieggers. They loaned the money to the bank on the promise that it would repay them or either of them, with interest. Two contracts were thus made, fully supported by consideration. The proposition has ample sanction in principle and precedent.

In In re Edwards' Estate, supra, 140 Or. 431, 440, 14 P. 2d 274, 277, the savings deposit, made up of the funds of each, was payable to the husband or the wife, or the survivor. In holding the widow entitled to the deposit as the survivor, under the contract of deposit, Rossman, J., in an excellent opinion, said:

''When Mr. Edwards, June 28, 1930, deposited in the bank the sum of $2,377.60, with the approval of his wife, the relationship of debtor-creditor was created between the bank and the two Edwards. The legal status of the account was a chose in action. 7 C. J. 641. The bank now having become the debtor, the parties had the right to name as the creditor or creditors any individual or group which they chose, and also to provide that the happening of any contingency, as, for instance, death of the creditor or any of the creditors, should of itself change the identity of the obligee or obligees. Such being their rights, the three agreed that both of the Edwards or their survivor

should be the creditors and that each should have the right to withdraw all or any part of the bank balance. Surely that agreement was based upon a valuable consideration, for the bank received $2,377.60 for its promise, and promised to give no more than it received. * * * It seems evident that the wife did not obtain her rights through her husband by the process of a gift, but directly from the bank for a valuable consideration. Her right to demand whatever balance remained in the bank in the event of her survivorship was complete and beyond the power of the bank to revoke. Her interest in the balance, to be paid upon survivorship, was acquired in praesenti. Since they were obtained for a consideration and were irrevocable, they were not testamentary in character.''

One of the early cases holding that in joint and survivorship bank deposits the survivor takes by the deposit contract rather than by gift, is Chippendale v. North Adams Sav. Bk., 222 Mass. 499, 501, 111 N. E. 371, 373. There Williams had changed a deposit payable to him to a joint one payable to himself or Mrs. Worthington. In holding her entitled to the unused balance as against the administrator of his estate, the court said:

''The case therefore which we have to decide is not a case of an attempted gift of property but is a case where Williams the depositor through a novation had made a new contract with the savings bank by virtue of which either he or Mrs. Worthington could draw such sums as either in their discretion chose during their joint lives, and the balance was to be withdrawn by, and so was to belong to, the survivor. In such a case there is no gift of the balance upon the death of Williams. Mrs. Worthington (when she survived Williams) became the owner of the balance undrawn by virtue of the contract of deposit, and not by virtue of a gift which took effect on Williams's death.''

The principle is thus expressed in 38 Harvard L. Rev. 244:

''But it would seem that a better analysis of the transaction indicates that B's interest is not one transferred from A, either as a legal interest or as an equity, but is a legal interest directly created in B by the depositary's promise to pay A or B, as joint obligees. * * * The transaction seems, therefore, not one

of legal gift from A to B, but the purchase by A for A and B of a contract right against the bank to be held from its creation jointly by himself and B. That there may be such joint obligations entailing the right of survivorship is generally conceded.''

Other authorities and decisions upholding this proposition unequivocally are In re Ivers' Estate, 4 Wash. 2d 477, 104 P. 2d 467, 471, 472; Holt v. Bayles, supra, 85 Utah 364, 39 P. 2d 715; New Jersey Title Guarantee & Trust Co. v. Archibald, 90 N. J. Eq. 384, 107 A. 472, affirmed 91 N. J. Eq. 82, 108 A. 434; Cleveland Trust Co. v. Scobie, 114 Ohio St. 241, 151 N. E. 373, 48 A. L. R. 182; Malone v. Sullivan, 136 Kan. 193, 14 P. 2d 647, 85 A. L. R. 275; Deal's Admr. v. Merchants & Mechanics Sav. Bk., 120 Va. 297, 91 S. E. 135, L. R. A. 1917C, 548; Wisner v. Wisner, 82 W. Va. 9, 95 S. E. 802; Estate of Staver, supra, 218 Wis. 114, 260 N. W. 655; Commonwealth Trust Co. v. Grobel, 93 N. J. Eq. 78, 114 A. 353; Illinois Trust and Sav. Bk. v. VanVlack, 310 Ill. 185, 141 N. E. 546; Perry v. Leveroni, 252 Mass. 390, 147 N. E. 826, 827; Metropolitan Sav. Bk. v. Murphy, 82 Md. 314, 33 A. 640, 641, 31 L. R. A. 454, 51 Am. St. Rep. 473; Erwin v. Felter, 283 Ill. 36, 119 N. E. 926, 927, L. R. A. 1918E, 776; In re Rehfeld's Estate, 198 Mich. 249, 164 N. W. 372; Negaunee Nat. Bk. v. Le Beau, 195 Mich. 502, 161 N. W. 974, L. R. A. 1917D, 852; In re Estate of Hutchison, 120 Ohio St. 542, 166 N. E. 687; Sage v. Flueck, supra, 132 Ohio St. 377, 7 N. E. 2d 802; Berberick v. Courtade, 137 Ohio St. 297, 28 N. E. 2d 636; Schwartz v. Sandusky County Sav. & L. Co., 65 Ohio App. 437, 30 N. E. 2d 556; Goldston v. Randolph, 293 Mass. 253, 199 N. E. 896, 103 A. L. R. 1117; Splaine v. Morrissey, 282 Mass. 217, 184 N. E. 670; Castle v. Wightman, 303 Mass. 74, 20 N. E. 2d 436; Kennedy v. McMurray, 169 Cal. 287, 146 P. 647, Ann. Cas. 1916D, 515.

It is true that as to the nondepositing payee in any such deposit transaction, whatever he received is a gift to him from the depositor, but it is a gift effected by the contract with the bank. The principle is not unlike that underlying a contract for the benefit of a third person. As stated in Rohrbacher v. Citizens Bldg. Assn., Ohio App., 40 N. E. 2d 157, 161, to wit:

''Where such a promise based on a valuable consideration

is made for the benefit of a third person it is enforcible by such beneficiary against the promisor, even though as between such beneficiary and the promisee no consideration passed and no obligation existed. * * * 'A third person beneficiary under a contract is a "donee beneficiary" if the purpose of the promisee in obtaining the promise of all or part of the performance of the contract is to make a gift to the beneficiary or to confer on him [or her] a right against the promisor to some performance neither due nor asserted to be due from the promisee to the beneficiary.' Note 18, 17 C. J. S., Contracts §519, page 1127. See, also, Restatement of the Law of Contracts, Vol. 1, Section 133, Page 157."

See, also, Estate of Staver, supra, 218 Wis. 114, 260 N. W. 655, and Rhorbacker v. Citizens Building Assn., 138 Ohio St. 273, 34 N. E. 2d 751, 753, 135 A. L. R. 988. Under such circumstances the gift need not be completed by a delivery. The contract takes the place of a delivery. As stated in Castle v. Wightman, supra, 303 Mass. 74, 76, 20 N. E. 2d 436, 437:

"A present gift, not of the shares themselves but of the interest created therein by the contract with the bank, would be effected without delivery of the pass book to the respondent Wightman, since the contract itself takes the place of the delivery ordinarily required."

The Illinois court, in Illinois Trust and Sav. Bk. v. Van-Vlack, supra, 310 Ill. 185, 191, 141 N. E. 546, 548, said:

"The mere fact of the retention of the pass-book by one of the two owners of the deposit is of no importance. If the contract entered into by the two persons concerned with the bank was effectual * * * each of the owners of the deposit had an equal right to possession of the book and its possession by either did not affect the right of the other. Both could not have actual manual possession of it all the time. The possession of either was for the benefit of both and was not inconsistent with the contract."

Other decisions so holding are In re Edwards' Estate, Goldston v. Randolph, Schwartz v. Sandusky County Sav. & L. Co., Holt v. Bayles, Abegg v. Hirst, Splaine v. Morrissey, all supra,

Rhorbacker v. Citizens Building Assn., supra, 138 Ohio St. 273, 34 N. E. 2d 751, 135 A. L. R. 988; Halaska v. Vnoucek, 307 Ill. App. 183, 30 N. E. 2d 117; Sage v. Flueck, supra, 132 Ohio St. 377, 7 N. E. 2d 802; Commercial Trust Co. v. White, 99 N. J. Eq. 119, 132 A. 761, 763 [affirmed 100 N. J. Eq. 561, 135 A. 916]; Andrew v. Citizens State Bank, supra, 205 Iowa 237, 216 N. W. 12; In re Estate of Winkler, supra, 232 Iowa 930, 5 N. W. 2d 153. In the case of a donee-beneficiary, ratification or assent is presumed from the fact of benefit without burden. Rohrbacher v. Citizens Bldg. Assn., supra, Ohio App., 40 N. E. 2d 157, 161; 17 C. J. S., Contracts, 1133, section 519(e); Streeper v. Myers, 132 Ohio St. 322, 7 N. E. 2d 554, 556; In re Estate of Stockham, 193 Iowa 823, 186 N. W. 650, 22 A. L. R. 765.

In fact, there are a number of decisions holding that in the creating of any joint and survivorship deposit or account, where the necessary intent is shown, whether it be by gift, trust, or joint tenancy, the possession of the passbook, while a matter for consideration, is not at all conclusive of the rights of the parties. As said in Marston v. Industrial Trust Co., R. I., 107 A. 88, 89, respecting the gift of a present interest in a savings deposit, to wit:

"Delivery of the bank book is not a prerequisite to the creating and passing of a joint title in a savings deposit. It is but one piece of evidence shedding light upon the intention of the parties. When it is clear that the intention of the parties is to create a joint account so that both of the parties have an equal right to draw on the funds, it is immaterial which holds the book."

To the same effect, see Industrial Trust Co. v. Scanlon, 26 R. I. 228, 58 A. 786, 3 Ann. Cas. 863; Commonwealth Trust Co. v. Du Montimer, 193 Mo. App. 290, 183 S. W. 1137; McLeod v. Hennepin County Sav. Bk., 145 Minn. 299, 176 N. W. 987 (a gift); Kelly v. Beers, supra, 194 N. Y. 49, 86 N. E. 980, 128 Am. St. Rep. 543; Kennedy v. McMurray, supra, 169 Cal. 287, 146 P. 647, Ann. Cas. 1916D, 515; Blick v. Cockins, 252 Pa. 56, 97 A. 125, 126; Negaunee Nat. Bk. v. Le Beau, supra, 195 Mich. 502, 161 N. W. 974, L. R. A. 1917D, 852; 5 Zollman, Banks and Banking, 242, 243, section 3223.

This court, in the case of In re Fenton's Estate, supra, 182 Iowa 346, 355, 165 N. W. 463, 465, hulled the proposition to the nut when it queried:

"The joint account and the joint execution of the paper delivered to the bank in connection therewith present a case of a three-sided contract. If it were binding on one, was it not binding on all? The very fact that the bank assumed a liability to the survivor of the joint depositors was itself in the nature of a consideration for the agreement of Mrs. Fenton that the survivor should take the funds."

II. In addition to the contract between the Bieggers and the bank, we think there was a contract between Mr. and Mrs. Biegger, as clearly shown by the bank records and by what took place in the bank at the time deposit account No. 1217 was opened. As set out in our statement of facts, when the Bieggers came into the bank to deposit the $5,000, they intended to deposit it in account No. 807. They brought that passbook with them and told the teller they wished to deposit the money in that account. The question of insurance then came up and they talked to the assistant cashier about it, and it was only to avoid the risk of not having insurance coverage that the new account No. 1217 was opened. Had the deposit been made in account No. 807, each would have deposited funds in the same account and there would have been consideration for their withdrawal and survivorship agreement. There was a similar situation in Berberick v. Courtade, supra, 137 Ohio St. 297, 300, 28 N. E. 2d 636, 637. The court said:

"Neither the contributions each made to the common fund nor the proportion of the total amount is disclosed by the record, and no presumption is to be indulged other than that each contributed a portion of each of the funds. It follows, then, that the portions furnished by each constituted a valuable consideration for the portions furnished by the other. A contract relation was established which was supported by mutual considerations. The rights of the parties were determined and fixed by contract at the time the deposits were made pursuant thereto, and death does not abrogate the rights of the parties from such contract.

1202

* * * The holding of this court as announced in the syllabus in the case of In re Estate of Hutchison, supra, [120 Ohio St. 542, 166 N. E. 687] is applicable here: 'While joint tenancy with the incidental right of survivorship does not exist in Ohio parties may nevertheless contract for a joint ownership with the right of survivorship and at the death of one of the joint owners the survivor succeeds to the title to the entire interest, not upon the principle of survivorship as an incident to the joint tenancy but by the operative provisions of the contract.' "

In the case of In re Estate of Fulk, 136 Ohio St. 233, 235, 24 N. E. 2d 1020, 1021, 1022, the joint deposit was contributed to by each of them and was payable to either or the survivor. The court said:

"Such contracts are frequently made between members of the same family. They are not made at arms length as are contracts between strangers. * * * Beyond peradventure, when John and Ida Fulk deposited their money in that joint account, they thoroughly trusted each other in life. While both lived either could have withdrawn the entire amount. That being true, did they not so intend to trust each other even in the event of death of one or the other? * * * The issue here concerns not the bank but the contractual relationship of John and Ida Fulk with each other. * * * John Fulk takes by virtue of the contract. He and Ida Fulk were joint promisees, each agreeing that the other could withdraw the entire amount."

When appellee and his wife came to the bank to deposit her $5,000, they each knew that the survivor would be entitled to any undrawn balance in account No. 807, because they had been so told when that deposit was made. With this result in mind, Mrs. Biegger was desirous of making her contribution to this same account, necessarily with the understanding and intention that the balance in the augmented fund would become the property of the survivor. It is a reasonable assumption that they had agreed to deposit the $5,000 in that account on condition that the survivor would own any unused portion of the deposit. They made two accounts, instead of making the deposit in account No. 807, solely because of the insurance feature. But the bankers testify that Mr. and Mrs. Biegger wished each account to be

handled in the same way, that is, with each having the right to withdraw from either account during life and the survivor to take what was left. The fact that another account was opened payable to either does not indicate that they had any intention of making a different contract relationship than was contemplated by depositing the $5,000 in account No. 807. The two accounts, it appears to us, were tied together, each being conditioned upon the maintenance of the other, with the contribution each made a consideration for the contribution of the other.

III. We think the trial court can be sustained by the record in its finding that Mrs. Biegger made a simple gift inter vivos to her husband, effective when made, at the time account No. 1217 was opened, of an interest therein. The testimony of the bankers and the entire record support such a finding. Under the authorities cited herein, neither could have exclusive manual possession of the interest given or of the interest retained. Delivery thereof could not have been made actually or symbolically. Such delivery therefore was not necessary. But it appears in evidence, without objection, that each passbook was accessible to both in the home until the wife went to California. Thereafter they were in his possession. That he had possession of passbook for account No. 1217 after she had gone to California appears inferentially from the fact that he made a withdrawal of $500 from the account before her death, on December 6, 1940. Every essential of a gift of an interest in a joint deposit account may be found established under the record. The fact that Mrs. Biegger had the right to make withdrawals from the deposit at any time did not nullify the gift. This is the majority rule, as noted in 7 Am. Jur., Banks, 304, section 431. (Citing Goldston v. Randolph, supra, 293 Mass. 253, 199 N. E. 896, 103 A. L. R. 1117; Cleveland Trust Co. v. Scobie, supra, 114 Ohio St. 241, 151 N. E. 373, 48 A. L. R. 182; Burns v. Nolette, 83 N. H. 489, 144 A. 848, 67 A. L. R. 1051; Negaunee Nat. Bk. v. Le Beau, supra, 195 Mich. 502, 161 N. W. 974, L.R.A. 1917D, 852.) See, also, In re Estate of Winkler, supra, 232 Iowa 930, 933, 5 N. W. 2d 153, 155, quoting from 7 Am. Jur., Banks, 304, section 431; 103 A. L. R., pages 1130, 1131. In Coolidge v. Brown, 286 Mass. 504, 507, 190 N. E. 723, 724, it appears that Mary L. Hastings changed a savings deposit account payable to herself to one pay-

able to herself or to Coolidge or to the survivor. She made the account with the provision that it was "subject to withdrawal of whole or part by either or the survivor." She retained the bankbook in her possession and made two withdrawals therefrom. The court held that a completed gift had been made and awarded the balance to Coolidge as the survivor, saying:

"As a matter of law Mary L. Hastings could legally change a deposit of money in a savings bank to the joint account of herself and Roland E. Coolidge, which change would operate as a present and complete gift in joint ownership if she clearly intended such a result. Battles v. Millbury Savings Bank, 250 Mass. 180, 187 [145 N. E. 55]. The reservation of the right of withdrawal, like the reservation of income for the donor's life, does not impair the validity of the gift."

In Menger v. Otero County State Bank, supra, 44. N. M. 82, 83, 98 P. 2d 834, the court said:

"The question here presented involves one of the right of the surviving wife to claim as her own the money from a joint account placed in defendant bank by the husband and out of his own estate and with the right of both husband and wife to withdraw from the account upon their individual signature during their respective lifetimes."

In finding for the estate of the wife who had survived her husband, as against the latter's estate, the court said, at page 89 of 44 N. M., page 838 of 98 P. 2d:

"There was sufficient evidence in the case at bar to support the court's findings of fact that the deceased husband put his money into the bank with the intention, well understood, and acquiesced in by the bank, that in case of his death his wife as survivor, would take it all, as indeed under the arrangements and the conditions of the deposit as in the form of a joint account, either she or he had the right to take a part or all while they both lived. We think it does not become important that there was no written contract between themselves or with the bank covering the point, so long as the understanding and intention of the donor, the husband, may be ascertained. It does not become important to determine whether the court based its con-

clusions of law and judgment upon the theory of a trust, a joint tenancy or a gift to the wife, for if any one of the theories be good the objections urged are without merit and the judgment should be affirmed.''

With reference to Burns v. Nolette, supra, 83 N. H. 489, 144 A. 848, 67 A. L. R. 1051, the court, in the Menger case, continues, at page 87 of 44 N. M., page 837 of 98 P. 2d:

''As was well reasoned in the case * * * the retention of a right to draw upon the account during his life time did not defeat the gift, because the donee's right vested at once and was not increased upon the donor's death; that the effect of his death was simply to remove the power of the donor to defeat the donee's right by himself withdrawing the deposit.''

See, also, in support of this proposition, Hoboken Bank for Savings v. Schwoon, 62 N. J. Eq. 503, 50 A. 490, 492.

IV. May the decree of the trial court be sustained upon the theory of a joint tenancy? We know of no reason why it may not be. There is no legislative or judicial ban against agreements for joint tenancies in any kind of property. This is the general rule. In re Estate of Winkler, supra, 232 Iowa 930, 5 N. W. 2d 153, 155, and authorities cited; Miller v. American Bank & Trust Co., 71 Colo. 346, 206 P. 796; First National Bank v. Mulich, 83 Colo. 518, 266 P. 1110; Eisenhardt v. Lowell, 105 Colo. 417, 98 P. 2d 1001, 1002; 14 Am. Jur., Cotenancy, 81, section 10; 33 C. J., Joint Tenancy, 906, section 8; annotations 103 A. L. R. 1133–1140; 135 A. L. R. 1007–1012; 48 A. L. R. 189; 66 A. L. R. 881; L. R. A. 1917C, 550; note Ann. Cas. 1916D, 520.

Indeed, the right of a survivor to any remaining balance in a bank deposit, particularly, is not in disfavor with either legislatures or the courts. Code section 9267 might well be considered as an incentive to their establishment. Certainly, when we find the courts seeking to uphold them on so many theories— contract, trust, gift, joint tenancy, tenancy by entireties—there is little basis for saying the courts are against them.

As we have already stated, the name given to the transaction is quite unimportant and immaterial. It is not a question of terminology but of what the parties intended and did. As said

1206

in Metropolitan Sav. Bk. v. Murphy, supra, 82 Md. 314, 322, 33 A. 640, 641, 31 L. R. A. 454, 51 Am. St. Rep. 473, and quoted and approved in In re Edwards' Estate, supra, 140 Or. 431, 445, 14 P. 2d 274, 277, 279:

"It is neither the object of the law nor the duty of the Court to seek by narrow and technical construction the means of invalidating a contract clearly expressive of the intention of the contracting parties * * *."

The appellant has offered no testimony and no argument based upon what took place in the bank, or between Mr. or Mrs. Biegger at any other time, which fairly supports any other conclusion than that reached by the trial court and by this court.

■ V. Appellant's allegations in his reply that his mother's ill health, lack of business experience, complete confidence in her husband and his domination over her, caused her to permit him to act as her agent to attend to her business affairs are supported only by the testimony of the appellant. But it appears also from his testimony, and from the record generally, that she was usually with him on business matters, consulted attorneys with him, and, because of her inability to drive an automobile, her husband always took her in the automobile when it was necessary. These allegations have not been established. He and a friend testified to the mutual affection between appellant and his mother and it is not disputed.

The appellant offered no testimony by which he sought directly to refute any of the evidence of the appellee. But he testified to alleged conversations with his mother, and by her declarations sought inferentially to refute the pleaded allegations and the contentions of the appellee. The following testimony of the appellant in his own behalf as administrator was received, subject to the following objection of appellee, and a motion to strike based upon the same grounds. The examination is as follows:

"Q. Did you ever talk to your mother concerning what disposition she would make of her property upon her death? A. I did. Defendant's attorney: Objected to because the witness is incompetent under the dead man's statute—11257. And for the further reason it is incompetent under the statute in reference

to the testamentary disposition of property, requiring it to be in writing and witnessed by two competent and disinterested witnesses. A. Yes, sir, on two different occasions. Q. Will you tell us about them please? Defendant's attorney: The same objection. A. When we were returning from my grandfather's funeral, in Illinois—I had been advised while there to ask her to make a will, when they come into an inheritance; and upon our return I spoke to her about it, and she said—Well, she said she would talk to George about it. And the other occasion was during the summer of 1940, after she had received her inheritance. I happened to be up there and I asked her if she had got all settled for the estate and she said she had, and I asked her if she had made any provision by will or anything, so if anything happened, and she said she had, and she said if anything would happen I would receive my two-thirds and George would be coming in for his one-third of the estate; and that is all that was said about it."

Even if this testimony were not inadmissible because of the incompetency of the witness under section 11257 of Iowa Code, its probative value is greatly weakened by the interest of the witness and the hearsay and self-serving character of the testimony. It was not objected to on these grounds. Exclusionary rules of evidence, of course, may be waived. And it is the rule generally, and of this court, that when testimony is thus admitted it is in the record for what it is worth. This is particularly true in law actions. See De Long v. Iowa State Highway Comm., 229 Iowa 700, 711, 295 N. W. 91, and authorities cited; Goodale v. Murray, 227 Iowa 843, 860, 289 N. W. 450, 126 A. L. R. 1121. Although we said in Flint v. Varney, 220 Iowa 1241, 1243, 264 N. W. 277, 279:

"We have announced the rule that in equity cases, triable de novo in this court, any evidence introduced in the case from an incompetent witness under section 11257 will be disregarded by this court in reaching its conclusion. O'Neil v. Morrison, 211 Iowa 416, 233 N. W. 708; Nortman v. Lally, 204 Iowa 638, 215 N. W. 713."

But, giving this hearsay and self-serving testimony full consideration, it is in the record only for what it is worth, with all its

inherent weaknesses. As said in 32 C. J. S., Evidence, 1077, section 1034:

"Evidence intrinsically destitute of probative quality acquires no new attribute in point of weight by its production in the case."

See De Long v. Highway Commission, supra, 229 Iowa 700, 712, 295 N. W. 91. And in 31 C. J. S., Evidence, 948 et seq., section 216, the writer states:

"Self-Serving Declarations. Generally a party cannot make evidence for himself by his own declarations, and it is a well established general rule that a statement of a party, whether oral or written, which is of a self-serving nature is not admissible in evidence in his favor. [Citing numerous decisions, including those of this court.] * * * *Such declarations are equally inadmissible when offered by the declarant's representatives, devisees, or heirs, since, as noted infra this subdivision, the death of a declarant does not render his statements admissible.*" (Our italics.)

The italicized words are particularly applicable to the appellant's testimony, as the son and heir of the deceased declarant, and the administrator of her estate.

In Leighton v. Leighton, 196 Iowa 1191, 1196, 194 N. W. 276, 279, we said, in the words of Justice Weaver:

"This is not to say that the statements of the witnesses are so glaringly unreasonable or unnatural as to compel disbelief, but is a recognition of the fact that the interest of a witness in the result of the case in which he testifies cannot safely be overlooked in determining the credibility and weight of his testimony. The experience of courts and lawyers demonstrates that, no matter how high or low the rank or personal character or social standing of a witness may be, it remains true that, 'when self the wavering balance shakes, it is rarely right adjusted;' and the careful court or juror will not omit consideration of that factor in his conclusion upon the merits of a dispute."

In support of the aforesaid statements, see Hurst v. Jenkins, 161 Iowa 414, 416, 143 N. W. 401; Seevers v. Cleveland Coal Co.,

158 Iowa 574, 594, 138 N. W. 793, Ann. Cas. 1915D, 188; Thilmany v. Iowa Paper Bag Co., 108 Iowa 357, 359, 79 N. W. 261, 75 Am. St. Rep. 259; Evans v. Evans, 230 Iowa 434, 442, 297 N. W. 867; Williams v. Harrison, 228 Iowa 715, 722, 293 N. W. 41, 44; Bohen v. North American Life Ins. Co., 188 Iowa 1349, 1354, 177 N. W. 706; In re Estate of Coffin, 189 Iowa 862, 866, 179 N. W. 123; Rice v. Armour & Co., 194 Iowa 144, 147, 187 N. W. 588; Ankeney v. Brenton, 214 Iowa 357, 369, 238 N. W. 71; Abell v. Partello, 202 Iowa 1236, 1242, 211 N. W. 868; Owen v. Christensen, 106 Iowa 394, 400, 76 N. W. 1003.

 VI. It is our conclusion that the testimony of the appellant as to his personal communications with his mother, noted in the division just preceding, cannot be considered because of the incompetency of the witness under section 11257 of the Code. As applied to this case, sections 11257 and 11258 of the Code, which were always in a single section until divided in the 1924 Code, provide and mean, briefly: that no party, or interested person, is competent to testify to any personal communication or transaction of the witness with a person deceased, as against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person, but such party or person may testify to any personal communication or transaction between himself and the deceased as to which the executor, or another, named in the section, has testified in his own behalf. The difficulties which the bench and bar have had with this statute are indicated by the fact that over five hundred appeals for its construction had been taken to this court up to ten years ago. (Mason Ladd, 19 Iowa L. Rev. 521.) It is not surprising that there is some confusion and lack of harmony in the court's decisions. This is particularly true of what is now section 11258. Section 11257 means that such party or interested witness is competent to give such testimony against a party who is not such an executor et al., that is, the only party who is protected by the section and is entitled to object is one who is such an executor, or other person named in the section. Section 11258 means that if an executor, administrator, or a member of any of the classes named in the section, is examined, in his own behalf, as to any personal transaction or communication between the adverse party, or other interested person, and

the deceased, then such adverse party or interested witness may be examined as to the same transaction or communication, but not as to any other. In such case the ban of section 11257 is lifted. Hintz v. Hintz, 176 Iowa 392, 396, 397, 157 N. W. 878; Clarity v. Sheridan, 91 Iowa 304, 308, 59 N. W. 52; Boardman v. Brown, 114 Iowa 678, 87 N. W. 674; Canaday v. Johnson, 40 Iowa 587, 590; Wood v. Brolliar, 40 Iowa 591, 593, 594; Ivers v. Ivers, 61 Iowa 721, 723, 17 N. W. 149; In re Estate of Edwards, 58 Iowa 431, 435, 10 N. W. 793; Luehrsmann v. Hoings, 60 Iowa 708, 709, 15 N. W. 571.

The first matter to determine in any case where the incompetency of the witness is raised under section 11257 is whether the party objecting is an executor, administrator, or other person named in the section. In other words, it is only a party protected by the section who is entitled to object. Drake v. Painter, 77 Iowa 731, 734, 42 N. W. 526; City National Bank v. Crahan, 135 Iowa 230, 238, 112 N. W. 793; Clark v. Ross, 96 Iowa 402, 410, 65 N. W. 340; McClintic v. McClintic, 111 Iowa 615, 82 N. W. 1017; Shierry v. Randall, 214 Iowa 1053, 243 N. W. 350; Lennert v. Cross, 215 Iowa 551, 241 N. W. 787, 244 N. W. 693; Shuman v. Supreme Lodge K. of H., 110 Iowa 480, 481, 81 N. W. 717; Canaday v. Johnson, supra, 40 Iowa 587, 590; Bellows v. Litchfield, 83 Iowa 36, 44, 48 N. W. 1062. If he is such a person, it is then essential that he claim as such, that is, what he is claiming must be by reason of or under the relationship mentioned in the section, as such, and not otherwise. In other words, if he be an heir of the deceased, but is making his claim as a creditor on a promissory note of the deceased, he is not entitled to object under the section. Harrow v. Brown, 76 Iowa 179, 180, 40 N. W. 708.

Is the appellee a member of one of the classes named in the section? He is the husband of the deceased, and is therefore next of kin to her, which is one of the relationships mentioned in the section. See French v. French, 84 Iowa 655, 658, 659, 51 N. W. 145, 15 L. R. A. 300; Campbell Banking Co. v. Cole, 89 Iowa 211, 213, 56 N. W. 441; Boyles v. Cora, 232 Iowa 822, 6 N. W. 2d 401, 414; State Bank of Dexter v.

Fairholm, 201 Iowa 1094, 1097, 206 N. W. 143; Clark v. Ross, supra, 96 Iowa 402, 410, 65 N. W. 340; Brandes v. Brandes, 129 Iowa 351, 354, 355, 105 N. W. 499. The appellee is not claiming anything because of the relationship of widower or next of kin. He claims as "survivor" under the section. In Reynolds v. Iowa & Nebraska Insurance Co., 80 Iowa 563, 566, 46 N. W. 659, 660, the court said:

"The word 'survivor' is usually applied to the longest liver of two or more partners or trustees, and has been applied in some cases to the longest liver of joint tenants, legatees, and to others having a joint interest in anything."

The language is quoted in Salyers v. Monroe, 104 Iowa 74, 77, 73 N. W. 606. In Gavin v. Bischoff, 80 Iowa 605, 608, 609, 45 N. W. 306, the husband, as one jointly liable with his wife, on her death was held to be a "survivor" of his joint debtor, as the term is used in this statute. We have no doubt that in the joint and survivorship relation which the deceased and the appellee had respecting the deposit accounts, and as joint creditors of the bank, the appellee, as the survivor of his wife, is within both the spirit and the letter of this statute. The testimony of the appellee is not needed to establish the joint and survivorship relation, or the joint tenancy in the deposits. These relationships, as we have found, were established by the testimony of the bank officers, the bank records, and the legitimate inferences to be drawn from what took place and the conduct of the appellee and his wife in the bank and thereafter. The appellee might well be called an assignee of his wife, but we do not pass upon this point.

There can be no question but that appellant was an incompetent witness under the statute to testify to the conversations, as they were personal communications and transactions with a deceased person, and against the appellee claiming as survivor of the deceased. As said in French v. French, supra, 84 Iowa 655, 659, 51 N. W. 145, 146, 15 L. R. A. 300:

"The statute under consideration was designed to protect persons claiming some right or title from a person who at the time of the examination is dead * * *."

See, also, Blachly v. Newburn, 179 Iowa 790, 802, 162 N. W. 36. To the same effect the court said, in Drake v. Painter, supra, 77 Iowa 731, 734, 42 N. W. 526, 527:

"It is therefore readily understood that the statute is for the aid and protection of the estate, heirs, etc.,—persons named in the section,—the privies of the deceased person * * *."

The appellant cites no case which gives his contention any support, unless it be In re Estate of Culbertson, 204 Iowa 473, 485, 215 N. W. 761, 766. The result reached and the decision therein are clearly right, but we question the soundness of the reason for the holding which involves the "dead man statute." The opinion states:

"This testimony by the executor as to conversations with Mrs. Culbertson prior to her decease was objected to under Section 11257, Code of 1924; but it is made admissible by the following section, 11258."

The estate was that of Aaron Culbertson and not Mrs. Culbertson. It was of this estate that the witness was executor. The record discloses no personal communications or transactions with Aaron by either the executor or the objecting plaintiff, nor any between the latter and Mrs. Culbertson, deceased. Section 11258 appears to be in no way involved in the action. Relying upon this decision, the appellant states:

"It would seem that section 11258 renders the administrator competent to testify to a communication between himself and decedent."

There is no basis for such proposition. Section 11258 is in no way involved in this case.

Section 11258 provides that the prohibition in section 11257 shall not extend to any *transaction* or *communication* as to which any such executor, or any of the others named, shall be examined in his own behalf. The two italicized words do not refer to any transaction or communication between such executor et al., and the deceased, but between the deceased and the adverse party, or interested witness. This clearly appears in Canaday v. Johnson,

supra, 40 Iowa 587, 590, and in Wood v. Brolliar, supra, 40 Iowa 591, 593, 594. In the latter case, the court said:

"There is but one exception to this prohibition [the first sentence in section 3639, Code of 1873, now section 11257]; it shall not extend to any transaction or communication as to which any such executor, heir at law, or next of kin, shall be examined in his own behalf. Appellee claims that, inasmuch as plaintiff is an heir of deceased, this exception applies to him, and renders him competent. But, evidently this is not the meaning of the statute. If an executor, heir at law, or next of kin, is a party to an action, and in his own behalf testifies respecting any personal transaction or communication *between the deceased and the opposite party, or a third person interested in the event of the suit*, then such other party or interested person may testify respecting the same transaction. See Canaday v. Johnson, ante, p. 587." (Italics ours.)

There is nothing in section 11258 that renders an administrator, or other person designated in the section, competent to testify to a personal communication between himself and the deceased, *against a legatee, devisee, heir at law, executor, next of kin, assignee, survivor, or guardian of an insane person*, referred to in the section. If that were permitted it would greatly impair the purpose and effect of section 11257. An administrator or other person named in the section can testify to such communication or transaction only against someone not named in or protected by the section, and he can do that under section 11257.

The record discloses no testimony by the appellant administrator to any personal communication or transaction between the deceased and the appellee which would release the prohibition of section 11257 to the appellee, and that is the only purpose of section 11258, or way in which it could become applicable in this case.

Among our decisions are found such statements as the witness was not incompetent because he "was introduced by the executor himself, and that the testimony was in his favor and not *against* him." Leasman v. Nicholson, 59 Iowa 259, 261, 12 N. W. 270, 13 N. W. 289. "In any event, he was examined by the administrator, and the section does not apply." Frick v.

Kabaker, 116 Iowa 494, 505, 90 N. W. 498, 502. "As the witness was called on behalf of the administrator, he was not incompetent, under section 4604 of the Code." Dean v. Carpenter, 134 Iowa 275, 277, 111 N. W. 815, 816. "Section 4604 is not applicable. The evidence [a conversation of the wife and administrator with the deceased] was not offered in an action against, but in favor of, the administrator." Owens v. Iowa County, 186 Iowa 408, 412, 169 N. W. 388, 390. In each of these decisions the witness was competent, but the statements are misleading. The test of competency is not whom the witness was for, but whom was he against. In three of these cases the witness was competent; not because he was for the executor et al., or was a witness for him, but because his testimony was against a party who was not protected by the statute. In Frick v. Kabaker, the witness was competent because he was not a party or interested in the event of the action.

Appellant states that he has found no case of this court involving the question before us in which the party in a representative capacity also had a personal interest. There are a number of such cases. In Neas v. Neas, 61 Iowa 641, 643, 17 N. W. 30, 31, all parties were heirs and all were interested. In holding they were incompetent as witnesses under section 3639, the court said: .

"Certain of the testimony of the defendant, Levi M. Neas, and of his wife * * * relating to personal transactions between Levi M. Neas and Samuel M. Neas, deceased, was objected to by the plaintiffs as incompetent and inadmissible, under the provisions of section 3639 of the Code. The defendants insist that this section is not applicable to the present case, which is a controversy between the heirs of Samuel M. Neas, deceased. But the testimony in question was offered *against the heirs at law of Samuel M. Neas, deceased,* and thus is brought within the direct inhibition of the statute. In our opinion, the testimony of Levi M. Neas and his wife as to personal transactions with the deceased is not admissible, and must be eliminated from the case." (Italics ours.)

In Duffield v. Walden, 102 Iowa 676, 679, 680, 72 N. W. 278, 279, the plaintiff, as administrator of his wife's estate, cashed a certificate of deposit belonging to his wife and her estate and took the proceeds for his own use. She left no issue and only collateral

heirs, the defendants. They objected to plaintiff's application to sell real estate to pay debts, because, if the proceeds of the certificate were restored to the estate, the sale would be unnecessary. Duffield (plaintiff and administrator) was a witness for himself. Against objections to his competency he was permitted to answer. In holding him incompetent, the court said:

"A cross-examination made it appear that his claim of ownership was through a personal transaction with his wife. * * * It is thought by appellee that the point is not controlled by Code, section 3639, but it seems to us to be clearly within its provisions. The defendants are heirs at law of Mrs. Duffield. The plaintiff is her husband, seeking to prove a personal transaction with her to establish a right as *against her heirs at law* * * * Omitting the fact that Duffield· is a party, in a representative capacity, *and it still remains that he is a witness interested in the event of the suit,* and clearly within the letter of the law making him incompetent." (Italics ours.)

Duffield was in the same situation as is the appellant.

Without further quotation, we call attention to other decisions holding directly that in actions in which opposing parties are within the protection of section 11257, no party can be examined as to personal communications or transactions with deceased, against an opposing party. See In re Estate of Manning, 215 Iowa 746, 750, 244 N. W. 860; Vorse v. Vorse, 186 Iowa 1091, 1101, 171 N. W. 186; Calhoun v. Taylor, 178 Iowa 56, 62, 63, 159 N. W. 600; Palmer v. Palmer, 62 Iowa 204, 206, 17 N. W. 463; Ellis v. Newell, 120 Iowa 71, 76, 94 N. W. 463; Nordman v. Marshall, 118 Iowa 508, 92 N. W. 693; In re Estate of Perkins, 109 Iowa 216, 80 N. W. 335. Other cases holding by clear inference that such is the rule, are Brandes v. Brandes, supra, 129 Iowa 351, 355, 105 N. W. 499; In re Estate of Wharton, 132 Iowa 714, 109 N. W. 492; Drake v. Painter, supra, 77 Iowa 731, 42 N. W. 526; Harrow v. Brown, supra, 76 Iowa 179, 180, 40 N. W. 708.

Both appellant and appellee refer to our recent case of In re Estate of Gollobit, 231 Iowa 1074, 3 N. W. 2d 191, and the appellee states that it is favorable to him. Syllabus 2 of the North Western report of the case is:

"In proceeding on claim for nursing services rendered for decedent, defendant executor was not competent to testify concerning conversations had with the decedent. Code 1939, section 11257."

This statement has justification in the opinion. However, it is contrary to our previous holdings. The plaintiff in the case, while a sister of the testator, was not claiming anything as legatee or heir at law of the deceased. The executor, who was a brother of testator, was the sole beneficiary. Plaintiff claimed only as a creditor of the estate, and was therefore not within the protection of section 11257, and was not entitled to object to the executor's testimony as to personal communications and transactions with the deceased. There was no question about the performance of plaintiff's services. The defendant conceded they were performed. The only issue on the appellant's appeal was whether the check given in payment should not have been held payment in full. He did not complain about any violation of section 11257, but that was all the appellee, who did not cross-appeal, argued in this court. The matter was not properly before this court on appeal, and it was an inadvertence to pass upon it in the opinion.

In Shuman v. Supreme Lodge K. of H., supra, 110 Iowa 480, 482, 81 N. W. 717, we said:

"Three elements must exist in order to exclude this testimony under the section mentioned [section 4604, Code, 1897]: (1) The matter must be in the nature of a personal transaction or communication; (2) the witness must be a party to the suit, or interested in the event thereof; (3) the action must be against the executor, administrator, assignee, etc."

The appellant herein meets each requisite, and was clearly incompetent to testify to the conversations with his mother.

VII. Appellant complains that section 11257 was violated by permitting the appellee to testify that he walked out of the bank with both passbooks in his possession, and also in testifying that it was his intention that both he and his wife could draw from the deposits. It may be questionable whether

either item of testimony is obnoxious to the section, and we do not find it necessary to pass upon the question, but if they were, they are not prejudicial to appellant under the record and our conclusions as noted herein. We have held that one who has a personal communication or transaction with one deceased is competent to testify as to his state of mind concerning the matter. See In re Estate of Talbott, 209 Iowa 1, 8, 224 N. W. 550; Gray v. Sanborn, 178 Iowa 456, 465, 467, 159 N. W. 1004; Secor v. Siver, 188 Iowa 1126, 1132, 161 N. W. 769, 176 N. W. 981. See, also, In re Estate of Newson, 206 Iowa 514, 526, 219 N. W. 305.

It is our conclusion that the appellee has established his case under the contract theories as discussed in Divisions I and II hereof by the proper quality and quantum of evidence, both direct and circumstantial. "The existence of the mutual understanding, the proposal and acceptance, may be implied from conduct and circumstances." In re Estate of Newson, supra, 206 Iowa 514, 518, 219 N. W. 305, 307. See, also, In re Estate of McKeon, 227 Iowa 1050, 1055, 1056, 289 N. W. 915; Kladivo v. Melberg, 210 Iowa 306, 313, 227 N. W. 833, 837. "* * * evidence is always of a high character when it produces in the mind an abiding conviction of the truth of the matter sought to be established." Stutsman v. Crain, 185 Iowa 514, 526, 170 N. W. 806, 810. If it could be said that the decree is not established on the theory of contract or of joint tenancy, it is our further conclusion that it is established on the theory of a gift inter vivos. The testimony of the appellant of the conversations with his mother, being inadmissible because of his incompetence as a witness, leaves no direct testimony against the case made by appellee. The inference that the mother would leave something to her son does not outweigh those matters which support the judgment, including the apparent high regard and trust existing between herself and her husband. The fact that in her condition of ill health she made no will, and made no attempt to change the joint-deposit arrangement, though she knew the balance would go to the survivor, gives substantial support to the contentions of the appellee.

In our comment upon the case of Taylor v. Grimes, supra,

223 Iowa 821, 273 N. W. 898, we did not intend to leave the impression that the court announced a rule of law therein that it was essential to a gift of an interest in a joint bank account that the donor should part with all right to and dominion over the joint account, and could retain no right to draw upon the account. Such was the contention of the writer of the opinion, but only two members of the court concurred in that view, and five members concurred only in the result of the opinion. The second headnote of the opinion [in the Iowa Reports] might be construed as stating a principle of law announced by the court, but such is not the fact. The opinion cites, in support of the view of the writer of the opinion and those who concurred with him, such a holding in In re Brown's Estate, 113 Iowa 351, 354, 85 N. W. 617, 618. Both of these cases were strongly relied upon by the appellant in the case before us. They were both referred to in In re Estate of Winkler, supra, 232 Iowa 930, 5 N. W. 2d 153, 155, 156, but were distinguished as not applicable as authority in that case.

In order that there may be no further question on the matter, we now hold that any decision or any statement in either opinion, that it is an essential element of a gift of a joint bank account, or of an interest therein, that the donor-depositor shall divest himself of all right or dominion over the account, and shall retain no right to draw upon it, is not the law in this state.

In support of appellant's contention that he was not an incompetent witness under Code section 11257, he relies upon McAleer v. McNamara, 140 Iowa 112, 113, 117 N. W. 1122, 1123, and contends that the appellee was neither an assignee nor a survivor of the intestate, and was therefore not entitled to make the objection under section 11257 to the competency of appellant as noted in Divisions V and VI hereof. In the cited case the claimant did not specifically allege that she was the assignee of the certificate of deposit but alleged that her mother on the day of her death had delivered to the defendant a certificate of deposit and said to defendant at that time: "Send this to Ellen [plaintiff], and let her come home and see me." This court said:

"This amounted to no more than an allegation of a gift to the plaintiff; and, unless it be said that a donee is an assignee

within the meaning of the statute, the testimony offered [of the claimed incompetent witness] should have been received. In my judgment a mere donee should not be held to be an assignee within the intendment of this statute. But whatever the rule of construction should be, it is manifest that it can only be invoked by one who has shown himself to be an assignee in fact. *A mere allegation that such is the fact is not sufficient, nor is evidence tending to sustain such an allegation alone sufficient, to exclude the testimony of a witness on that particular issue, even though such testimony relate to personal communications and transactions between the witness and the deceased.* Any other rule would permit a mere allegation in pleading to take the place of proof, and open the door for all kinds of fraud. [Citing cases.] * * * *McNamara was a competent witness on the question of assignment and he should have been heard.*'' (Italics supplied.)

The decision of this court that McNamara, the defendant, was not incompetent to testify to the particular matter, was right, but the decision has no application to the question before us. In that case the claimant plaintiff had shown, by others, the very transaction between her mother and the defendant upon which she based her claim to be an assignee. She was not an assignee, and if she had any claim to the certificate it was as a donee, as held by the court. But, since she claimed the transaction made her an assignee, and opened up the subject by showing the transaction, she could not thereafter preclude the defendant, a party to the transaction, from testifying as to what took place at the time, even though it was a personal conversation and transaction with the decedent. That is all the decision holds, as is clearly indicated by the italicized portion of the quotation.

It is urged by some of my associates, although no such contention was or is made by the appellant, that, under the holding of the cited case, the appellee could not *in the trial of this case* establish the fact that he was a survivor of the deceased, so as to entitle him to object under section 11257 to the competency of the appellant. In other words, before one who is in one of the classes listed in said section and within its protection can use that protection in a trial, he must first have established or had adjudicated in some other trial or proceeding that he is a

member of one of those classes. If that is the law, then the committees and the court in their attempt to reform and streamline trial procedure so as to expedite the determination of litigated matters have overlooked something. The cited case and no other case so holds. In fact, the decision holds to the contrary. For it holds that McNamara was entitled to testify as to whether there was an assignment, or, in other words, to determine *in that very action* whether the plaintiff was an assignee. The appellant did not occupy the position of McNamara in the cited case. The appellant was not a participant in the transaction which made the Bieggers joint owners of the deposit account with right of survivorship. He was not in a position to give any direct testimony as to what took place, as was McNamara. But he sought indirectly to attack the transaction by testifying to a personal conversation with the decedent wholly other than and different from the conversations and transactions which were had between the Bieggers and the bank establishing the joint accounts. Whether a person is a devisee, heir, next of kin, assignee, or survivor is largely a fact question, to be determined in the trial at hand, just as every other pertinent factual issue is to be determined. In the case before us, tried in equity, all evidence, subject to objections made, was received by the court for the determination of the case. It was the duty of the court to determine whether the appellee was a survivor within the provisions of section 11257. It so determined under evidence sufficient to sustain the finding, independent of any testimony of the appellee. It then necessarily had to find the appellant incompetent to testify to the personal conversation with his mother. We agree with these findings of the trial court. Supposing this case had been tried to a jury, and when the appellee objected to the competency of appellant the latter had insisted that appellee was not a survivor and not entitled to make the objection. Most certainly the court would have said that the question whether he was a survivor was one of fact for the jury to determine, under proper instructions. And it would have instructed them that if they found appellee was a survivor, then they should disregard the testimony of the appellant as to his mother's declarations. If this theory that the appellant was a competent witness be true, then

the purpose of the statute is largely defeated and its effect seriously impaired.

The decree is affirmed.—Affirmed.

OLIVER, MANTZ, and WENNERSTRUM, JJ., concur.

SMITH and HALE, JJ., specially concur and in result.

MULRONEY, C. J., and MILLER, J., dissent.

GARFIELD, J., takes no part.

SMITH, J. (specially concurring)—I concur in the result reached by the majority. The law is well settled that parties can create joint tenancies, with right of survivorship, in bank accounts. No citation of authorities should now be necessary to that proposition. We have repeatedly held that it is a simple question of intent. In re Estate of Winkler, 232 Iowa 930, 5 N. W. 2d 153, and cases therein cited. It is entirely immaterial whether it be the result of gift or contract.

The testimony here of the bank officials quite clearly establishes that the parties intended to create such a joint tenancy. It is fortified by other circumstances shown in the record. The testimony of plaintiff as to his mother's alleged statements to him (not claimed to have been made in the presence of defendant) was, I think, admissible as against objections under the "dead man statute." But those statements were hearsay and self-serving in character and would have been subject to that objection if it had been made. In any event, the testimony was of little weight and entirely insufficient to overcome the positive and direct evidence as to the intention of the parties.

I would affirm the decision of the district court without reviewing the whole field of law on the issue involved. That has already been adequately done in prior cases.

HALE, J., joins in special concurrence.

MULRONEY, C. J. (dissenting)—I am unable to concur in the majority opinion and respectfully dissent therefrom.

The decree of the trial court states that by agreement of the parties the cause was "transferred to equity and to the equity side of the calendar for hearing, trial and determination by the

court." The hearing in this court is, therefore, de novo. See In re Estate of Custer, 229 Iowa 1061, 295 N. W. 848, and cases there cited. The trial court ruled that the "claim of the defendant George A. Biegger, to the bank account * * * be and the same hereby is confirmed and established against any and all claims of the plaintiff."

Since the defendant, by pleading and stipulation, admitted that the $5,000, which was the source of the bank account, belonged to the decedent, he had the burden of proving ownership of the account. The fact that he had possession of the funds by a withdrawal did not lessen his burden. Malcor v. Johnson, 223 Iowa 644, 273 N. W. 145; Roberts v. Morse, 190 Iowa 1344, 181 N. W. 678. Defendant concedes, and it is the law, that the mere fact that the deposit was one from which both could withdraw while they both lived and the survivor could withdraw after the death of one does not prove ownership of the account in the survivor. Sinift v. Sinift, 229 Iowa 56, 293 N. W. 841, and cases there cited. This would of course be true even though the survivor exercised his withdrawal rights.

The trial court in its written findings concluded "that it was the intention of Myrtle E. Biegger to create a right of survivorship in deposit number 1217 in whichever party survived the other * * *. * * * this conclusion is supported by the record under either the theory of gift inter vivos or under the theory that a contract was entered into between the parties named in the deposit and the Humboldt Trust & Savings Bank." The pleaded defense theories of contract and gift inter vivos are not of particular importance, for the intent of Mrs. Biegger at the time she made this deposit is the controlling factor in the case. The theories of gift, contract, or joint tenancy with the right of survivorship are important only insofar as the proof establishing one of the theories might show decedent's intention relative to the deposit. We said in Sinift v. Sinift, supra, at page 62 of 229 Iowa, page 844 of 293 N. W.: "* * * this intent is the polar star by which the court must be guided, and that it is a question of fact * * *."

The evidence of decedent's understanding and intentions with respect to the deposit consists largely of the testimony of two bank officials of the depository bank. These witnesses testified

about an earlier deposit, No. 807, opened in 1936 in the name of "Mr. or Mrs. Geo. A. Biegger." This deposit was from Mr. Biegger's funds and the assistant cashier of the bank testified that at the time it was opened Mr. and Mrs. Biegger were at his window and that they "* * * asked in case it was put in the two names, as it ultimately transpired it was, if that would protect them in case of the death of either party and I assured them it would." Upon cross-examination the same witness testified with regard to account No. 807: "As I recall it, the matter was discussed whether or not the opening of the account or the deposit in the two names, 'Mr. or Mrs.' that in case one party passed away that the funds would automatically become the property of the other party"; that he told them it would be a joint account with the funds passing to the survivor; that they said that was the information they wanted.

The testimony with regard to account No. 807 becomes important because of what later transpired when the $5,000 deposit was made on April 26, 1940. This is the deposit in question and it is numbered 1217. On the date of this deposit Mr. and Mrs. Biegger were again in the bank, and the teller who waited upon them testified that they brought the passbook for account No. 807 and said they wanted to deposit $5,000 in that account; that he could not recall whether just one of them said that or both. The question arose as to the insurance coverage in excess of $5,000. He did not recall which of them asked the question, but he heard both of them discussing it and he referred them to the assistant cashier and after they talked to him they came back and completed the deposit. They said they wanted the account 1217 handled the same way, in regard to payment, as account 807, so in the event one died the account would go to the survivor:

"That this was specifically talked about, but witness does not remember which one said it. That it was witness' understanding, on the part of the bank, that on the death of either Mr. or Mrs. Biegger, the $5,000 account would be the property of the one surviving. That such was the bank's intention in receiving the account. That witness told them that would be the case."

The assistant cashier related what transpired when he was consulted upon the question relative to the insurance cover-

age if the $5,000 was deposited in account 807. He told them if they put the $5,000 in a new account labeled ''Mrs. G. A. Biegger or G. A. Biegger'' it probably would afford this extra protection. He stated that ''they talked that over between themselves * * * in his presence .* * * and that is what was done.'' He also testified, ''That they said nothing in the witness' presence about the right of either to draw upon the account and nothing about the survivor, in event of death''; that account 807 contained a balance of $3,600 on April 26, 1940:

Mr. Biegger testified that the deposits in account 807 were from his money, and, over objection that he was incompetent under section 11257, he testified that he walked out of the bank on April 26, 1940, with the passbook for account 1217 and that it was his intention ''that on and after April 26, 1940'' either or both had the privilege of withdrawing at any and all times from account 1217, and ''* * * that in the event of death it would go to the survivor, in either case,'' and that he had ''the same intention as to both accounts.'' He further testified that when account 807 was opened, and at all times up to decedent's death, his intentions ''were that it would always be hers, and not have to go through any legal court procedure or waste any time in getting the money, if it was needed * * * '' in event he died before his wife. He was then asked the following question: ''George, had it not been for your intention and understanding, on and after April 26, 1940, as to the rights of withdrawal and survivorship as you have testified here your intention was, concerning the 'Mrs. or Mr. G. A. Biegger' account, what is the fact as to whether or not you would from then on have made and maintained and carried as you did the other account 807?'' To which question he answered: ''I would have not.''

Mrs. Carrie Young, defendant's sister, told of certain conversations with decedent wherein decedent stated in 1939 that ''when she would get her father's estate, that she would put the same trust in her husband that he put in her, in her account.'' And that in the summer of 1940 decedent said ''that things were arranged satisfactory to her and to George as to their account, or their money.''

Plaintiff testified that he was appointed administrator of

his mother's estate, and, over objection that he was incompetent under section 11257, he related two conversations with his mother relative to the disposition of her property upon her death. The first occurred when he and his mother were returning from his grandfather's funeral. He stated:

"I had been advised while there to ask her to make a will, when they come into an inheritance; and upon our return I spoke to her about it, and she said—Well, she said she would talk to George about it. And the other occasion was during the summer of 1940, after she had received her inheritance. I happened to be up there and I asked her if she had got all settled for the estate and she said she had, and I asked her if she had made any provision by will or anything, so if anything happened, and she said she had, and she said if anything would happen I would receive my two-thirds and George would be coming in for his one-third of the estate; and that is all that was said about it."

Plaintiff also testified that he lived with his mother until her marriage to defendant in 1929 or 1930, and that his mother had toward him the normal love and affection of a mother toward a child.

I. Upon this testimony defendant argues that a contract was proven and that it was the expressed intention in harmony with the contract that the two accounts were joint accounts payable to husband or wife, and upon the death of either the same became the sole property of the survivor by reason of the contract. Defendant argues the contract established by the evidence was that the defendant was to continue and maintain account 807 in consideration of the deposit of account 1217 being made in both names with the right of withdrawal and survivorship. I do not find such a contract established by the evidence. The testimony of the bank officials does not establish any contract. They do testify to certain actions and statements of Mr. and Mrs. Biegger at the time of deposit 1217 which might be consistent with the existence of the contract. But there must of necessity be some evidence that the oral contract was actually made. The defendant did not testify as to the existence of such an agreement with his wife. True, he states that it was his intention and under-

standing that each could withdraw from account 1217, and in the event of death it would go to the survivor, and that had it not been for his intention and understanding as to the rights of withdrawal and survivorship in account 1217, he would not have made, maintained, and carried account 807. This is no proof of an existing oral contract whereby he agreed to maintain account 807 and his wife agreed to deposit the $5,000 in a joint account with property rights in a survivor. Such evidence sounds in estoppel. The entire record shows a complete lack of any affirmative proof of the contract pleaded by the defendant as one of his theories of defense. Perhaps it would be difficult for defendant to prove the pleaded oral contract under section 11257, but difficulty of proof does not justify its total absence. Because I would hold the defendant has not maintained his burden of proving the contract, I refrain from discussing the contention of plaintiff that maintaining account 807 was in the nature of past consideration which would not support the contract.

II. Defendant argues that.upon the whole record there is abundant testimony to show that decedent intended to pass ownership of the account to the survivor either on the theory of gift inter vivos or on the theory that she intended to create a joint tenancy with right of survivorship. Joint tenancy, although recognized in Iowa, is greatly disfavored. In Albright v. Winey, 226 Iowa 222, 226, 284 N. W. 86, 88, we stated that there had been no departure from the rule (found in Hoffman v. Stigers, 28 Iowa 302) condemning " 'joint tenancies, or at least their common-law incident—the right of survivorship.' " In re Estate of Winkler, 232 Iowa 930, 5 N. W. 2d 153, recognizes that there can be a joint tenancy in a bank account but the decision points out that joint tenancies are not favored. In the field of real-estate conveyances we find the courts have frequently stated that a conveyance to two persons will convey a tenancy in common unless a "contrary intention" is clearly manifested by the language used. In 14 Am. Jur. 82, 83, section 11, the comment is made that there is some difference of opinion as to whether a joint tenancy can be created by a grant by the owner to himself and another and the writer states:

"Other cases, however, take the view that a joint estate may be thus created where the intention to create it is clear."

In Hruby v. Wayman, 230 Iowa 653, 655, 298 N. W. 639, 640, we stated:

"The language used to express 'a contrary intention' [from tenancy in common] must clearly manifest such intention."

With respect to the evidence necessary to establish a gift inter vivos we need only say that it, too, must be clear and definite. In Bosserman v. Watson, 230 Iowa 627, 639, 298 N. W. 804, 810, where the defendant sought to establish ownership of bonds by proof of a gift by decedent to him, we stated:

"The burden of proof was upon * * * the defendant, to prove that Milo Remington during his lifetime gave the bonds in question to her and it is incumbent on her to sustain this burden by clear, convincing, and satisfactory evidence."

See, also, Malcor v. Johnson, 223 Iowa 644, 273 N. W. 145; and 28 C. J. 676, section 82, where it is stated: "'* * * it is held that gifts inter vivos are watched with caution by the courts, and that to sustain them the evidence must be clear and convincing * * *." [38 C. J. S. 869, section 67.]

As I have stated, the decedent's intent is controlling, no matter what theory of defense is pleaded. This intent to create a joint tenancy or execute a gift inter vivos must be established by clear, convincing, and satisfactory proof.

My examination of the record leads me to the conclusion that decedent intended that either she or her husband could withdraw all or any part of account 1217 and that after the death of one of them the survivor could withdraw all or any part of the balance of the account. As I have heretofore pointed out, this does not alone show an intent to pass the property interest in the account to the survivor. Defendant admits this, but points to the testimony of the teller of the bank, who testified that the Bieggers wanted account 1217 handled the same way as 807 and that he told them the account would be the property of the one surviving. Defendant also points to the evidence that he had possession of the passbook when they left the bank on April 26, 1940, and the passbook was left in the home when decedent went to California, where she died about a month later. All of this testimony is some evidence that decedent intended that ownership of the account

would pass to her husband upon her death. But it is not very convincing in view of other facts and circumstances. The bank officials did little more than relate the provisions of section 9267 of the Code, which provides that bank deposits made in the name of two persons, payable to either, or payable to either or the survivor, can be paid to either whether the other be living or not. As we stated in Sinift v. Sinift, supra, at page 82 of 229 Iowa, page 853 of 293 N. W.:

"* * * such legislation was enacted for the protection of banks with respect to the payment of the funds, and does not affect their title to the deposit, or determine the legal rights of the parties thereto as between themselves * * *."

The record shows that defendant played the leading part in the transaction of opening the account. There is some evidence from defendant's own witness that decedent did not consider she had any rights of ownership in account 807. Defendant's sister's testimony of the statement by decedent, "I see that you have access to your husband's account, the same as I do," and "* * * she said * * * when she would get her father's estate, that she would put the same trust in her husband that he put in her, in her account," tends to show that she felt account 807 was defendant's, and that she merely had withdrawal rights in his account which rights she was going to give him in her account. The inquiry of the Bieggers as to whether putting the account 807 in the two names would protect them in the event of the death of either party is consistent with a theory that they wanted to know if the one furnishing the money would be protected.

Upon the whole record I think the defendant has not, by the necessary clear, convincing, and satisfactory proof, sustained his burden of proving the decedent intended the property interest in the account to pass to him. This conclusion is supported by the fact that in the disposition of her property she would naturally recognize the claim of her son to some share of the property that came to her from the son's grandfather. Although the record does not clearly show the extent of her estate, it indicates that decedent owned no other property. It is undisputed that the husband paid the funeral expenses and expenses of her last illness out of his personal funds. To sustain the husband's

contention, we must believe that this mother, who bore a natural affection of a mother for her son, intended to absolutely disinherit him. She was not in good health at the time she received this money from her father's estate. In Albright v. Winey, 226 Iowa 222, 228, 284 N. W. 86, 89, where we concluded the language of a conveyance was insufficient to create a joint tenancy, Justice Hamilton, speaking for the court, stated:

"The contention of appellant in this case furnishes a forcible illustration justifying the policy adopted in the State of Iowa disfavoring joint tenancies with right of survivorship. Mrs. Donahue had a husband and a son. It is almost inconceivable that she would undertake to barter away the inheritance of the natural objects of her bounty, her husband and son, taking a gambler's chance that she would survive her brother."

The son testified that his mother said in the summer of 1940, after the deposit was made, that in case anything would happen he would receive his two thirds and George would come in for one third. This testimony could mean that she intended the amount of the account would be disposed of under the statutes of descent as a part of her estate. It negatives an intention on her part to give the property right in the account to defendant.

III. Defendant argues and the majority opinion holds that the son was an incompetent witness who could not be examined with respect to the communication between the son and the deceased, under section 11257, Code of 1939. This section provides:

"No party to any action or proceeding, nor any person interested in the event thereof * * * shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased * * * against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person * * *."

Previous decisions of this court construing this statute have not allowed the exclusionary effect of the statute to pass beyond its literal language. Because the statute is partly based upon the long-discarded common-law doctrine that interest in the outcome of litigation should render a witness incompetent to

1230

testify, it should not have a broad interpretation. A witness should be excluded only when the exact wording of the statute demands it. See Curd v. Wissler, 120 Iowa 743, 746, 95 N. W. 266; In re Estate of La Grange, 191 Iowa 129, 132, 181 N. W. 807. See, also, Wigmore on Evidence, 2d Ed., section 578.

A reading of the statute raises the question of whether the prohibition reaches the situation where the administrator is the plaintiff or the motivating force in the litigation. The statements in some of our earlier cases indicate that the statute applies only when the action or proceeding is "against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person." It is stated in Shuman v. Supreme Lodge K. of H., 110 Iowa 480, 482, 81 N. W. 717:

"Three elements must exist in order to exclude this testimony under the section mentioned: (1) The matter must be in the nature of a personal transaction or communication; (2) the witness must be a party to the suit, or interested in the event thereof; (3) the action must be against the executor, administrator, assignee, etc."

And in Owens v. Iowa County, 186 Iowa 408, 412, 169 N. W. 388, 390, which was a suit for damages for death of plaintiff's intestate, evidence of a party plaintiff as to personal communications between the deceased and his wife was admitted. The opinion states:

"Section 4604 [section 11257, Code of 1939] is not applicable. The evidence was not offered in an action against, but in favor of the administrator."

Again it is stated in In re Estate of Choate, 195 Iowa 715, 720, 192 N. W. 857, 859:

"* * * Were appellee and his wife competent witnesses, under section 4604 of the Code, to testify to the alleged oral agreement with testator? It seems to us that there can be no doubt upon this point. Appellee was the executor of the estate, and the proceeding is not, in the language of the statute, 'against the executor * * * or the assignee or guardian of such insane person or lunatic.'"

But in the earlier case of Leasman v. Nicholson, 59 Iowa 259, 12 N. W. 270, 13 N. W. 289, it is held that the statute does not prohibit a witness introduced by the executor from testifying for the executor as to personal transactions between the witness and the deceased, even though the executor is defending against a note claim against the estate and the witness may be personally interested in the event of a suit. In a supplemental opinion in this case, at 59 Iowa 263, 13 N. W. 289, this court gave a somewhat fuller discussion of the question presented by the objection urged, and stated:

"The question presented is as to what the word 'against' used in the statute shows the relation between. The plaintiff insists that it shows the relation between the words 'actions' and 'proceeding' on the one hand, and the words 'executor,' 'assignee,' and 'guardian' on the other. According to his construction, the disqualification is not intended to apply in actions brought *by* an executor, assignor, or guardian, but only in actions brought *against* an executor, assignee or guardian; and in the latter, it applies as well where the witness is examined in behalf of the executor, etc., as against him. According to the construction which we adopt, the disqualification applies in both classes of cases, but only where the witness is examined against the executor. This construction is without question the more natural one, grammatically considered, and we see nothing in the reason or policy of the law that calls for the other."

Under the construction adopted in the Leasman case or the construction adopted in the Shuman case and followed in the Owens case and also in In re Choate's Estate, the testimony of the administrator would be admissible here unless the defendant is also a member of the protected class. Defendant is not an heir at law of decedent, but under the rule of French v. French, 84 Iowa 655, 51 N. W. 145, 15 L. R. A. 300, he is the next of kin within the meaning of this statute. But he is not being sued as next of kin nor is he here basing any claim as next of kin and I would hold the objection is not available to him because of that classification.

We must next consider whether defendant is protected by reason of his being an assignee or survivor. Defendant asserts

in pleading and argument that he is an assignee, but we have held that before the witness is incompetent, the objecting party must actually be an assignee of the deceased. In discussing who is an assignee under this statute, in the Shuman case it is stated, at page 482 of 110 Iowa, page 718 of 81 N. W.: "An assignment involves contractual `relations." We have previously held that there was no evidence of a contract in this case. And in McAleer v. McNamara, 140 Iowa 112, 114, 117 N. W. 1122, 1123, it is stated:

"A mere allegation that such is the fact [that objecting party is an assignee] is not sufficient, nor is evidence tending to sustain such an allegation alone sufficient, to exclude the testimony of a witness on that particular issue, even though such testimony relate to personal communications and transactions between the witness and the deceased. Any other rule would permit a mere allegation in pleading to take the place of proof, and open the door for all kinds of fraud."

In the same opinion Justice Sherwin stated:

"In my judgment a mere donee should not be held to be an assignee within the intendment of this statute."

Upon the reasoning expressed in the foregoing cases I would hold that the defendant, under the record in this case, cannot claim protection by reason of his being an assignee. Of course, the same rule would apply to the claim of the defendant that he is the survivor. Survivor, as used in the statute, probably does include the survivor of a joint tenancy, but defendant can invoke the objection under the statute only if he is the survivor of a joint tenancy. Whether he is or not is the fact in issue in this case. He can claim no right to the protective objection in an action to determine whether or not he is in the class entitled to the objection. The right to object follows the determination that he is the surviving joint tenant but it does not precede it. Defendant had the burden of proving ownership of the account. To sustain his burden he pleads he is an assignee or the survivor of a joint tenancy. He is not, in the trial, on the issue thus tendered by him, aided by the protective objection which the statute gives to an assignee or survivor. It is my

opinion that the defendant who had the burden of proving that he was an assignee or survivor of a joint tenancy could not, in this trial to determine those issues, object on the ground that he is an assignee or survivor and thus bar the testimony of the son as to personal communications with the deceased. I think the majority opinion overrules McAleer v. McNamara, supra.

I am somewhat fortified in my conclusion by the evident intent of the statute. The idea behind the statute is that the interest of the deceased person shall be protected. Because the deceased can no longer deny the claim of an adverse party, the law prevents the adverse party from telling his side of the story. This court said in the case of Blachly v. Newburn, 179 Iowa 790, 801, 162 N. W. 36, 39:

"The basis of the rule is that, the dead man's mouth being closed, the law closes the mouth of him who seeks to assert a claim against the dead man's estate, in so far as, in the assertion of the claim, the proof may rest upon personal transactions or communications between him and the dead man."

As we have previously pointed out, the fact that defendant in this case exercised his withdrawal rights after decedent's death is not important. He is the one who is asserting a claim against the decedent's estate. The plaintiff is defending against that claim and making the defense that the deceased could make if she were living. I would reverse.

MILLER, J., joins in this dissent.