R. WAYNE TAYLOR, Administrator, Appellee, v. LUTHER M. GRIMES et al., Appellants.

No. 43854.

JUNE 15, 1937.

H. H. Sawyer, for appellee.

Clark, Byers, Hutchinson & Garber, for appellant.

STIGER, J.—Florence Elliott entered the Home for the Aged of Des Moines, Iowa, in 1916, and resided there as a member until her death in February 1934, at which time she was 84 years old. When she entered the home she executed an instrument designated as a form of bond conveying her property to the home. Her only relative was a niece, Mrs. Mae Culp, of Memphis, Tennessee. Mrs. Culp came to Des Moines to visit

Mrs. Elliott in 1927 and in 1929. She occasionally corresponded with her and sent her small gifts from time to time.

In 1927, Mrs. Elliott opened a savings account in her own name in the First Federal State Bank of Des Moines, in the sum of $700. This account, on December 2, 1932, had increased, through deposits made by Mrs. Elliott and interest, to the sum of $1,000. The passbook and ledger sheet were in the name of Florence Elliott.

On December 2, 1932, the officers of the bank wrote the following words on the passbook and ledger sheet immediately after the name of Florence Elliott, "or L. M. Grimes". It is this savings account in the name of Florence Elliott or L. M. Grimes that is the subject matter of this suit.

After the death of Mrs. Elliott, the bank paid the savings account in the sum of $750 to Mr. Grimes. The plaintiff, as administrator of the estate of Mrs. Elliott, brought this action against L. M. Grimes and the bank for an accounting and for judgment for the amount found due.

Mr. Grimes bases his right to the fund on a gift made by Mrs. Elliott to him of the savings account on December 2, 1932, at which time the account was in the sum of $1,000.

The defendant alleged that for a long period of years prior to the entry of the decedent into the Home for the Aged, he counselled and advised said decedent in business matters; that he had made investments for her and counselled and advised her frequently and his services, which were of aid and benefit to the decedent, were not paid for in any way and no compensation was ever requested or demanded of said decedent by this defendant and said gift so made by the decedent to this defendant was voluntary and without suggestion on the part of this defendant or any other person and was made by the decedent because of her long friendship for this defendant and in appreciation of the services rendered by said defendant to the decedent throughout a period of twenty-five years and more.

The trial court found no gift of the money was made to L. M. Grimes by Florence Elliott during her lifetime and entered judgment against him for the amount claimed by the plaintiff. The court further found that the payment of the money in the account at the time of the death of Mrs. Elliott to Grimes was legal and authorized under the provision of Code section 9267 and dismissed the action as to the bank.

Defendant Grimes appealed from the judgment against him. The plaintiff appealed from the decree dismissing the action against the bank. The defendant Grimes having furnished a bond to pay any judgment that might be entered against him, the plaintiff dismissed his appeal.

The Home for the Aged authorized the bank to pay the fund to L. M. Grimes. The case is before us on the appeal of Grimes and the sole question for determination is whether Mrs. Elliott made a gift of the savings account to Mr. Grimes on December 2, 1932.

The appellant had the burden of proving the gift and to sustain the burden relies primarily on a signature card, identified as Exhibit A, and a letter written to him by Mrs. Culp after the death of Mrs. Elliott.

The signature card reads as follows:

"First Federal State Bank, Des Moines, Iowa

"Below, please find duly authorized signatures which you will recognize in the payment of funds or the transaction of other business on our account.

"Mrs. Florence Elliott
"L. M. Grimes

"Date Dec. 2, 1932. Savings."

The circumstances under which Exhibit A was signed are related by appellant as follows:

"I saw the card when Mr. Tyler (Vice President of the bank) gave it to me to take over to Mrs. Elliott, took it over there and she signed it and I signed it. I took this signature card over to Mrs. Elliott and she signed it and I signed it and took it back to the bank and gave it to them."

After Grimes brought the card back to the bank, its officers, without any authority from Mrs. Elliott, and relying solely on the signature card, changed the account from the individual account of Mrs. Florence Elliott to the account of Mrs. Florence Elliott or L. M. Grimes.

Mr. Harrison, assistant cashier of the defendant bank, testified without objection that, "This account was always known as Mrs. Elliott's account and it was my understanding that the money in the account belonged to Mrs. Elliott. I never knew anything to the contrary. The placing of this card, (Ex. 'A')

was a mere authorization upon the part of the bank to recognize Mr. Grimes' signature in connection with the account; I never heard anybody in the bank say anything to the effect that the money in the account or any part of it belonged to Mr. Grimes. As far as I know Mr. Grimes never furnished any of the money, and all of it came from Mrs. Elliott. I was never informed that Mr. Grimes claimed any part of it.'' The witness further testified that Mrs. Elliott kept the custody of the passbook and that it ''might have been my understanding'' that whatever Grimes did under Exhibit A was on behalf of Mrs. Elliott.

It is apparent that the bank did not construe its form Exhibit A to constitute a gift of the savings account to appellant.

The conduct of Mr. Grimes suggests that he too thought the signature card was only an authorization to draw checks for the benefit of Mrs. Elliott. During her lifetime he made no claim to the fund nor does it appear that he drew any checks on the fund for his own benefit. The only check shown by the record to have been drawn on the account by Mr. Grimes was dated November 17, 1933, in the sum of $13.13 signed by L. M. Grimes ''for Mrs. Elliott''. On the check is the following notation, ''delivered money to her today.''

With reference to the services performed for and advice given to Mrs. Elliott which appellant alleges induced the gift, the evidence shows that she called Mr. Grimes on the phone on quite a number of occasions and that he would see her at the home. She gave all of her property to the home as early as 1916, which was only a few years after he first knew her and the only property owned by her after she entered the home was the savings account. So the counsel given her and services rendered must have been primarily limited to the fund that was deposited in the bank.

The letter written by Mrs. Culp to the appellant is in part as follows:

''As an introduction I will state that I am the only daughter of Lizzie Lyon Chester, Florence Elliott was her youngest sister and my Aunt.

''The last named person is the one with which this letter is concerned. From the time of her passing on to this date I

have been expecting some word from you or the bank where she did business as to the disposal of what was left.

"I know all the details. She told me many times in the last few years that I was to have what was left. I know about your friendship with her and that she did not pay you for all the little kindness that you did and that something was to be given you later."

In this letter Mrs. Culp claims the fund, and the letter sustains the claim of the appellee that Mrs. Elliott intended to give the fund to Mrs. Culp and that she had transferred it to her prior to her death rather than the contention of the appellant.

We now turn to the evidence offered by appellee. Mrs. Alta Sammons lived near the home and was very well acquainted with Mrs. Elliott for eight years prior to her death. She testified that when Mrs. Culp would come from Memphis to visit her Aunt that she would stay at the home of the witness; that Mrs. Culp would put her clothes in order, shop for her, take her out to shows and look after her welfare; that after Mrs. Culp went home, Mrs. Elliott would talk about her financial plans in connection with her niece; that she talked of putting a burial fund in one account and deposit the remainder in Mrs. Culp's name; that the last time they discussed this plan was in November 1932. On that date the witness testified that Mrs. Elliott stated in regard to the deposit in Mrs. Culp's name that she (Mrs. Elliott) had waited too long and wanted to know if the witness would take the $100 that she had in the bottom of her trunk and deposit with another $100 and put the remainder in Mrs. Culp's name as they had talked before. She said as soon as she got able to open her trunk and get on her feet she wanted to take everything out, and have the witness take the money down; that she didn't see Mrs. Elliott for a few weeks and when she went back to see her on December 10 or 12, 1932, to do the errand for her Mrs. Elliott stated that Mr. Grimes was an old acquaintance and would do little things for her as the witness was doing and that he (Grimes) had taken the money and deposited it in the bank as she had requested. The witness further testified, that Mrs. Elliott told her in January 1933, that Mr. Grimes had taken care of the money as she requested her to do or intended to do herself months before and had brought the bank book back to her; that Mr. Grimes had taken care of her

business instead of her; that Mr. Grimes was an old acquaintance and didn't mind doing little things for her.

A considerable part of the record is devoted to the physical and mental condition of Mrs. Elliott. It discloses that she was erratic, peculiar and quarrelsome with some of the inmates of the home.

Her mental competency on December 2, 1932, is not seriously questioned. She was ill from pneumonia during the year of 1932, had failed mentally and physically and was 82 years of age at that time.

█■█ The mere opening of a joint account each having an equal right to draw does not in and of itself establish a gift. 28 C. J. 664; 48 A. L. R. 191. There must be an intention to make a gift; a present intent to part with the title and to transfer all right to and dominion over the subject of the gift to the donee without power of revocation followed by delivery of the subject matter of the gift. Andrew v. Citizens St. Bk., 205 Iowa 237, 216 N. W. 12; Staton v. Vernon, 209 Iowa 1123, 229 N. W. 763; Hollingsworth v. Hollingsworth, 212 Iowa 1165, 235 N. W. 726; In re Brown's Estate, 113 Iowa 351, 85 N. W. 617; Myers v. Myers, 197 Iowa 1137, 198 N. W. 484; Runnels v. Anderson, 186 Iowa 1370, 173 N. W. 91; Tucker v. Tucker, 138 Iowa 344, 116 N. W. 119; Woodward v. Woodward, 222 Iowa 145, 268 N. W. 540; Vosburg v. Mallory, 155 Iowa 165, 135 N. W. 577, Ann. Cas. 1914C, 880; In re Estate of Belgard, 202 Iowa 1356, 212 N. W. 116.

█■█ The rule in this state is, as established by the above cases, that where a deposit is made in the name of the depositor and another the rule as to gifts applies, and the depositor must not only have the present intention to make a gift but also divest himself of all control and dominion over the subject of the gift. As stated in the case of In re Brown's Estate, supra, 113 Iowa 351, on page 354, 85 N. W. 617, 618:

"Each still had the right to draw the money. In order to constitute a gift, there must be an actual transfer by the donor of all right and dominion over the thing given."

In other states, if the joint account was created with the clear intention of vesting in the donee a present joint interest with the right of survivorship, the retention of an interest in the fund and a right to control the same will not invalidate the gift.

Appellant's claim that the gift was consummated at the time the joint account was created and that he received a vested joint interest in the savings account with right of survivorship is based on the decisions in states that have adopted this rule. As above stated, such is not the rule here.

If the joint deposit is made with the intention of making a gift and the depositor divests himself of all power over the subject of the gift and vests full title in the joint payee it is very generally held that such a deposit constitutes a valid gift. See, generally, L. R. A. 1917C, 564; 48 A. L. R. 199; 66 A. L. R. 882.

The appellant admits he counselled and advised Mrs. Elliott during a period of 25 years about her very limited business affairs. At the time of the alleged gift she was 82 years of age and had failed physically and mentally. The relationship was one of trust and confidence and in conjunction with his claim that the signature card, Exhibit A, was sufficient evidence of a gift and created a vested joint interest in the fund with incident of survivorship, it was incumbent on him to prove that at the time it was signed by Mrs. Elliott she "acted with freedom, intelligence, and full knowledge of all the facts." Burger v. Krall, 211 Iowa 1160, 1167, 235 N. W. 318, 321. The defendant does not claim that he explained to Mrs. Elliott the legal effect of the instrument that he claims for it. He only states that he secured her signature to the card and returned it to the bank.

As above stated, the defendant relies on Exhibit A, the signature card, and the letter from Mrs. Culp to prove that Mrs. Elliott intended to make a gift of the fund to him. There is no oral evidence that Mrs. Elliott had such an intention.

On the part of the appellee there is direct evidence that Mrs. Elliott intended, after providing for a burial fund, to give the balance of the account to Mrs. Culp and that she thought the account had been so arranged by Mr. Grimes. She retained an interest in and control over the fund. The retention of the passbook by Mrs. Elliott, while not conclusive, may be considered. Whatever checks were drawn on the fund by Mr. Grimes were for the benefit of Mrs. Elliott.

The burden of proof was on appellant to prove by clear and convincing evidence that Mrs. Elliott intended to make a gift of the savings account to him. He has failed to sustain this burden.

828

Furthermore all of the money in the account was deposited by Mrs. Elliott. It was her money. Appellant claims the fund as the survivor. It was incumbent on him to prove that in some way the title passed to him from the owner. His contention is that it passed by gift. He must fail in this contention not only because he did not sustain his burden to prove an intention to make a gift but also because Mrs. Elliott did not divest herself of dominion and control over the account, but retained an interest in it and the power to draw the money.

We concur in the finding of the trial court that no gift of the money was made by Mrs. Elliott to appellant and the decree and judgment appealed from is affirmed.—Affirmed.

ANDERSON and KINTZINGER, JJ., concur.

RICHARDS, C. J., and MITCHELL, DONEGAN, PARSONS, and SAGER, JJ., concur in result.