# IN THE COURT OF APPEALS OF IOWA

No. 15-0343
Filed March 23, 2016

**IN THE MATTER OF THE ESTATE OF**
**MERVIN C. POTHS,**

**SHERYL POTHS,**
Intervenor-Appellant.

_____

Appeal from the Iowa District Court for Lucas County, John D. Lloyd, Judge.

A sister challenges her brother's actions as executor of their father's estate. **AFFIRMED.**

Louis R. Hockenberg, Samantha J. Gronewald, and Amanda A. James of Sullivan & Ward, P.C., West Des Moines, for appellant.

William L. Shelton and R. William Petersen of Shelton Law Firm, Chariton, for appellee.

Verle W. Norris of Verle W. Norris Law Firm, Corydon, for appellee.

Heard by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

Sheryl Poths appeals the district court's denial of her application to remove her brother, Ronald, as executor of their father's estate. She further argues her father, Mervin, did not complete an inter vivos gift of corporate stock to Ronald and the stock should be included as an asset of the estate. Because we find Mervin completed the gift of stock, and the district court did not abuse its discretion in refusing to remove Ronald as the executor, we affirm.

I.      **Background Facts and Proceedings**

Mervin Poths died testate on September 14, 2012. His will—admitted into probate on October 10, 2012—appointed his son, Ronald, as executor. Verle Norris, who represented Mervin before he died and drafted the will, served as counsel for the estate. Ronald and Sheryl were beneficiaries of the will. The siblings did not have a close relationship even before their father's death. Sheryl hired an attorney to represent her in matters concerning the estate within two weeks of the admission of her father's will into probate.

Valued at approximately $1.17 million, the estate's assets included farm land, livestock, farm implements, bank accounts, an unincorporated feed store, stock in Poths Grain, Inc., a closely held corporation, and personal property. Sheryl's primary point of disagreement with Ronald is the Poths Grain. Ronald served as corporate president, while Mervin, as director, ran the day-to-day operations. Ronald drove the grain truck, and the corporation paid him twenty-five percent of the payment for each load delivered. Sheryl was not an officer of the corporation.

Since Mervin's will entered probate, Sheryl has been disenchanted with Ronald's filings on behalf of the estate. Ronald initially filed the estate's report and inventory on January 10, 2013. Sheryl filed a petition to remove Ronald as executor on June 5, 2013. Ronald filed an amended report and inventory on June 27, 2013. On August 19, 2013, Sheryl objected to the amended report and inventory. She claimed the inventory should reflect one-hundred percent of Mervin's shares in Poths Grain because an inter vivos gift of fifty percent of the stock from Mervin to Ronald was not completed.

The district court addressed the stock controversy by appointing a temporary executor under Iowa Code section 633.343 (2013). Both parties stipulated to the December 6, 2013 appointment of retired judge Dale Hagan as temporary executor. His role was "investigating and making a determination as to the decedent's ownership interest in said stock." On April 28, 2014, Hagan issued a report finding Mervin completed the gift of stock to Ronald, and as a result, the estate inventory correctly included only Mervin's remaining one-half interest in the corporation. Sheryl filed an objection, contending the report contained hearsay and biased information. On November 3, 2014, the temporary executor resigned for health reasons. The district court granted his resignation.

On December 17, 2014, the district court held a hearing on Sheryl's removal petition, at which attorney Norris represented the estate. The next day, the court held a separate hearing on the question of the inter vivos gift, at which Norris testified regarding his personal knowledge of Mervin's actions in transferring the stock to Ronald. Ronald was represented by a different attorney

at the second hearing. Norris remained in the hallway until called to testify and did not object or return to counsel table during the proceedings.

On January 28, 2015, the district court issued an order denying Sheryl's request to remove Ronald as executor and finding the inter vivos gift of stock was completed. Sheryl now appeals.

## II. Scope and Standards of Review

We review de novo as probate issues are tried in equity. *See* Iowa Code § 633.33. But we review the district court's decision declining to remove the executor for abuse of discretion. *See In re Estate of Rutter*, 633 N.W.2d 740, 745 (Iowa 2001). The trial court has broad discretion in deciding whether to remove an executor. *In re Estate of Lininger*, 297 N.W. 310, 312 (Iowa 1941); *In re Estate of Randeris*, 523 N.W.2d 600, 605 (Iowa Ct. App. 1994). The appointment of an attorney is within the power of the executor. *See generally In re Will of Kenney*, 239 N.W. 44, 44 (Iowa 1931); *In re Estate of Buck*, 569 N.W.2d 400, 401-02 (Iowa Ct. App. 1997). We also review de novo the determination of an inter vivos gift because the issue was tried in equity. *See Raim v. Stancel*, 339 N.W.2d 621, 622 (Iowa Ct. App. 1983).

## III. Analysis of Sheryl's Claims

Sheryl argues the district court wrongly concluded that, before his death, Mervin completed a gift of shares in Poths Grain to Ronald. She further contends the court should have removed Ronald as executor of Mervin's estate. She claims the gift created a conflict of interest for Ronald, he engaged in self-dealing, he did not provide her with information in a timely manner, and he did not obtain an appraisal of Poths Grain based on its fair market value. She also

claims he is hostile and their lack of communication is cause for removal. Lastly, she seeks removal of Norris as estate counsel.

###### A. Gift

After Mervin's wife Merilea died in early 2011, his thoughts turned to estate planning. That fall, Mervin contacted attorney Norris and expressed his desire to give half of his 5000 shares in Poths Grain to his son Ronald. Mervin told Norris that Ronald deserved the gift because of his hard work and loyalty to the corporation. Because Mervin could not find the original stock certificate, Norris helped him execute an Affidavit of Lost Certificate.

On March 1, 2012, a new stock certificate issued reflecting Mervin's ownership of all 5000 shares in the grain corporation. Mervin then assigned fifty percent of his shares to Ronald, and two additional stock certificates issued—one showing Mervin owned 2500 shares and one showing Ronald owned 2500 shares. Mervin signed the front of the certificates, which indicated he was president of the corporation. Norris completed forms on the back of the second and third certificates, indicating transfers from the original issuance dated March 1, 2012. The certificates remained in Norris's office. Norris testified that, because Mervin could not locate complete records for the corporation, Norris "thought it necessary to document the [stock] transfer in a formal way." So Norris "started a formal corporate record book" for Poths Grain after his March 1 meeting with Mervin.

Ronald testified his father told him about the transfer of stock sometime in March 2012, but Ronald did not see the stock certificates until after Mervin died. Neither Ronald nor the corporation reported the gift to tax authorities.

Sheryl asserted in the district court that Mervin did not complete the gift of stock to Ronald and therefore died owning all 5000 shares in the corporation. The district court determined Mervin's intent in transferring the shares to Ronald was "not in doubt" and his intent prevailed over any errors by the corporation in the issuance of the new certificates. On appeal, Sheryl argues the record does not support the court's finding of a completed gift.[1]

A gift is complete when the donor has a present intent to make a gift and divests himself of "all control and dominion over the subject of the gift." *In re Estate of Crabtree*, 550 N.W.2d 168, 170 (Iowa 1996) (quoting *Taylor v. Grimes*, 273 N.W. 898, 901 (1937)). The transfer of dominion and control must be a present transfer, not a future transfer. *Id.* The transfer must also be accompanied by three elements: (1) donative intent, (2) delivery, and (3) acceptance. *Gray v. Roth*, 438 N.W.2d 25, 29 (Iowa Ct. App. 1989). "The intent of the grantor is the controlling element." *Id.* Although less positive proof is required to establish gifts between parent and child, delivery is still required. *Gartin v. Taylor*, 577 N.W.2d 410, 412 (Iowa 1998). Here, Ronald bears the burden to show the gift is supported by clear and convincing evidence. *See Raim*, 339 N.W.2d at 624. Clear and convincing evidence means we find "no serious or substantial doubt about the correctness of the conclusion drawn from it." *Id.*

---

[1] She also seeks to strike the temporary executor's report finding a completed gift. The report was not entered into evidence and constituted only a recommendation from the temporary executor; it was not a final order from the district court. Accordingly, on appeal we need only address the overarching issue concerning the validity of the gift.

Sheryl contests all three elements. On the question of donative intent, she points to testimony that her father did not tell his long-time tax advisor about the stock transfer. Despite that evidence, the record contains clear and convincing proof that Mervin communicated his donative intent to both Norris and Ronald. Mervin also went to the effort to have new stock certificates created. Nothing in the record suggests Mervin left himself the option to rescind the transfer. We find Mervin possessed the present intent to give the stock to Ronald.

We turn next to the question whether Mervin acted on his donative intent or as Justice Ladd asked: "Was it ever delivered?" *Dolph v. Wortman*, 168 N.W. 252, 254 (Iowa 1918). Delivery can be actual, constructive, or symbolic. *Carlson v. Bankers Trust Co.*, 50 N.W.2d 1, 7 (Iowa 1951). Manual transfer is not required; instead, we may construe words and actions evincing the donor's intent to satisfy the element of delivery. *See Ferrell v. Stins*on, 11 N.W.2d 701, 704 (Iowa 1943).

When it comes to certificates of stock, our supreme court has not required physical delivery. *Leedham v. Leedham*, 254 N.W. 61, 62 (Iowa 1934). The *Leedham* court explained:

> A certificate of stock is not the stock itself, but merely written evidence of the ownership thereof and of the rights and liabilities resulting from such ownership. It is merely the paper representative of an incorporeal right, and stands on a footing similar to that of other muniments of title. . . . [R]eal shares of stock in a corporation may be transferred by a written assignment thereof, without delivery of such certificates representing the stock.

*Id.* (citation omitted); *see also Shaw v. Addison*, 28 N.W.2d 816, 821 (Iowa 1947) (reiterating "a gift of corporate stock is generally complete where the owner

directs the transfer to the donee on the books of the corporation even though the donor retains the new certificate issued in the name of the donee").

In this case, Mervin executed the new certificates of stock and directed the transfer of half his shares to Ronald. Attorney Norris recorded the transfer on the rejuvenated books of the corporation. Mervin did not retain dominion or control of the transferred stock. We conclude the transfer of the stock to Ronald, as reflected on the corporate books, fulfills the delivery requirement. *See Kintzinger v. Millin*, 117 N.W.2d 68, 75 (Iowa 1962), *superseded by statute on other grounds by*, Iowa Code § 633.449, *as recognized in In re Estate of DeVoss*, 474 N.W.2d 542, 545 (Iowa 1991).

As for the third element, Sheryl acknowledges the law presumes acceptance of a beneficial gift. *See Graham v. Johnston*, 49 N.W.2d 540, 543 (Iowa 1951). But she contends the record is "replete" with evidence showing Ronald did not accept the gift. She points primarily to his failure to report the gift on his 2012 tax returns, as well as the fact he did not retrieve the stock certificates from the attorney's office. These circumstances do not rebut the presumption of acceptance. As the district court observed, Ronald's failure to inform the tax preparers about the stock transfer reflected his lack of knowledge regarding tax laws rather than a repudiation of the gift from his father. In filing the estate's initial report and inventory in January 2013, Ronald acknowledged his acceptance of the gift of stock.

The transfer of stock from Mervin to Ronald satisfied the elements necessary to complete an inter vivos gift. Like the district court, we conclude any error in Mervin signing the certificates as president of the closely held corporation

(when Ronald actually held that office) did not invalidate the intended gift. We find no error in the district court's ruling on this issue.

### B. Removal of Ronald as Executor

An executor may be removed if he "has mismanaged the estate [or] failed to perform any duty imposed by law." Iowa Code § 633.65. The burden to prove removal of the executor is appropriate is upon the person seeking removal. *See In re Estate of Atwood*, 577 N.W.2d 60, 63 (Iowa Ct. App. 1998). But the burden shifts to the executor when an "indication of self-dealing" is present. *See generally In re Estate of Snapp*, 502 N.W.2d 29, 32 (Iowa Ct. App. 1993) (citation omitted). Evidence of the executor using his position as a personal advantage may also serve as grounds for an executor's removal. *In re Estate of Jones*, 492 N.W.2d 723, 726 (Iowa Ct. App. 1992).

On appeal, Sheryl lists several reasons why Ronald should be removed as executor.[2] First, she alleges Ronald engaged in self-dealing. *See* Iowa Code § 633.155 ("No fiduciary shall in any manner engage in self-dealing, except on order of court after notice to all interested persons . . . ."). Second, Sheryl argues Ronald failed to perform certain duties required by law, namely obtaining the court's permission to continue a business under Iowa Code section 633.83, providing information or properly updating the reports and inventories, and valuing the corporation at fair market value. She also argues her brother has

---

[2] Among the reasons, she asserts Ronald has a conflict of interest with the estate in claiming receipt of the corporate stock as an inter vivos gift. As we found above, the gift was completed. Sheryl's counsel agreed during the oral argument that the conflict-of-interest question would be moot once we resolved the gift issue. Accordingly, we do not consider whether Ronald had a disqualifying conflict involving the exclusion of the gifted shares from their father's estate.

engaged "in unwarranted hostility and lack of communication." We will address each of these reasons for removal in turn.

### 1. Self-Dealing

Executors are prohibited from engaging in self-dealing transactions with the estate and from obtaining personal advantage from their dealings with estate property. *See Harvey v. Leonard*, 268 N.W.2d 504, 512 (Iowa 1978). An executor cannot use his position, directly or indirectly, for his own advantage or profit. *See Coster v. Crookham*, 468 N.W.2d 802, 806 (Iowa 1991). "Personal benefit in dealing with trust assets is clearly the signpost of self-dealing . . . ." *In re Estate of Snapp*, 502 N.W.2d at 34.

Sheryl alleges two instances of Ronald's self-dealing. First, she argues Ronald improperly paid himself a salary from the corporation. Second, she claims Ronald used estate funds to pay taxes on property he would inherit at the closure of the estate.

In response to his sister's first allegation, Ronald argues his decision to pay himself constituted a corporate governance issue and was not an impermissible transaction between him and the estate. He also notes he paid himself the same amount as he received for hauling grain before Mervin's death. This case is unlike *In re Estate of Snapp*, where our court found an executor-son engaged in self-dealing by receiving "great personal benefit" from appointing himself as president of his father's companies shortly after his father's death and receiving "salaries" in excess of $450,000 over eight years. *Id.* Here, Ronald merely continued his role as truck driver for Poths Grain, receiving the same percentage payment from the corporation as before his father's death. Sheryl

has not shown Ronald derived a personal benefit from his position as executor in this instance.

Sheryl next claims the district court should have removed Ronald as executor because he "authorized the estate to pay the mortgage, taxes, and other bills related to the farmland and assets" that he inherited under their father's will. She cites Iowa Code section 633.350, which provides "when a person dies, the title to the person's property, real and personal, passes to the person to whom it is devised by the person's last will." She claims Ronald received the inherited property at the instant of Mervin's death, and then became personally responsible for those expenses. Ronald responds that proceeds from the sale of livestock owned by Mervin were deposited into the estate's bank account. Ronald also asserts he "advanced personal funds into the estate account when it was short on cash."

The district court did not "read Sheryl's request to remove the executor as asking the court to construe the decedent's will" and concluded it did not have the authority to do so in the removal proceeding. The court decided: "That task will be up to the court at the time of the hearing on the final report if Sheryl chooses to put it in issue at that time." We concur in the district court's reasoning. "A hearing on a final report in probate properly includes the liability of the executor to the estate." *In re Estate of Randeris v. Randeris*, 523 N.W.2d 600, 605 (Iowa Ct. App. 1994). We find no abuse of discretion in the district court's decision not to remove Ronald as executor based on this allegation.

### 2. Other Executor Duties

Sheryl also urges removal of Ronald as the executor based on his failure "to perform certain duties as required by law." For example, Sheryl argues the district court should have removed Ronald for not obtaining the court's permission to continue operating his father's unincorporated feed store. Iowa Code section 633.83 states: "Upon a showing of advantage to the estate, the court may authorize the fiduciary to continue any business of the estate for the benefit thereof. The order may be without notice, or after such notice as the court may prescribe."

The district court assumed without deciding that Ronald should have obtained permission to run the feed store. But the court went on to say "the feed store has been operated at a profit by the estate and that a negative equity position that existed at the time of Mervin's death had been eliminated. It is difficult to see what would be gained by removing Ronald as executor for successfully operating the feed business." We agree with the district court that Ronald's continuation of the feed business, at a profit, even without court approval, did not require his removal as executor. *See generally In re Estate of Amick,* 281 N.W. 786, 788 (Iowa 1938) (holding inadvertent failure to include certain assets in the estate did not necessarily require removal of executors).

Sheryl also contends the district court abused its discretion in not removing Ronald as the executor based on his failure to provide her with inventory information and his failure to amend the estate inventory when new information was discovered, as required by Iowa Code section 633.364. Sheryl claims Ronald made errors in listing farm equipment owned by the estate, failing

to list the value of the feed store, and not submitting a fair market valuation of the grain corporation. She points out these errors were in his benefit.

Ronald disputes the breadth of his missteps. He notes that he inadvertently miscategorized two pieces of equipment and omitted the feed store assets, but properly filed an amended report to reflect the accurate estate inventory. The district court determined that neither error caused it "any reason to believe that there is risk to this estate by Ronald continuing as executor." We find no abuse of discretion in the court's determination. *See In re Estate of Amick,* 281 N.W. at 788.

Ronald further argues Sheryl was not entitled to additional information as neither she nor the district court asked him to file an interlocutory report under Iowa Code section 633.469. That section reads, in pertinent part: "The court may on application of any interested party, or on its own motion, order such an accounting at any time." Iowa Code § 633.469. The district court stated it did not "see any missing information that would be provided by an interim report," but noted Sheryl could apply for such a report "as this estate winds toward conclusion" if she believed it was necessary. The record also reflects that Sheryl, through counsel, has requested numerous account statements and other information related to the estate, beyond what Ronald has filed with the court. On these occasions Ronald has responded, though not at the speed to which Sheryl believes she is entitled. We find no abuse of discretion in the court's disinclination to remove Ronald as executor based on these allegations.

Sheryl also asserts Ronald should have had the grain corporation appraised to determine its fair market value and to give an accurate accounting

of the estate's value. Ronald insists the corporation's value is the appraised value of its assets. The estate has not filed a final report and inventory. Gathering information for an estate is a fluid process. Because the estate is still open, we do not decide what should be done to determine the value of its assets. *See Ryan v. Hutchinson*, 143 N.W. 433, 439 (Iowa 1913). But we find no abuse of discretion in the district court not removing Ronald as executor on this basis.

Finally, Sheryl claims Ronald has been hostile and has not communicated with her about the probate proceedings. Unwarranted hostility between the executor and the beneficiaries may support removal of an executor. *Randeris*, 523 N.W.2d at 606. Ronald argues Sheryl has not preserved error on this particular ground for removal. Sheryl did not include these issues in her petition or otherwise bring them to the district court's attention. Therefore, we do not consider her argument concerning hostility and lack of communication. *See State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999) ("Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in the trial court.").

### C. Removal of Counsel

Sheryl also urges Norris be removed as counsel for the estate—advancing two reasons for this action. First, she argues if Ronald is removed the new executor should have the opportunity to appoint counsel in accord with Iowa Code section 633.82. *See In re Estate of Buck*, 569 N.W.2d 400, 402 (Iowa Ct. App. 1997) (stating "fiduciaries shall have the power to select the attorney of their choice"). Because we find no abuse of discretion in the district court's refusal to

remove Ronald, we do not have a situation where a new executor would wish to select their own attorney.

Second, Sheryl argues attorney Norris should be removed as counsel for the estate because he allegedly violated Iowa Rule of Professional Conduct 32:3.7[3] by testifying in regard to the inter vivos gift between Mervin and Ronald.[4] We do not believe that rule sweeps so broadly. Another jurisdiction has found that an identical state rule of professional conduct does not act as a "general disqualification of a lawyer likely to be a witness from representation of a party in all phases of a lawsuit." *Nevas v. MacDonald*, No. CV 04-0200626-S, 2006 WL 618568, at *1 (Conn. Super. Ct. Feb. 14, 2006); *see also Columbo v. Puig*, 745 So. 2d 1106, 1107 (Fla. Dist. Ct. App. 1999) (per curiam) (interpreting rule's key words "at trial" to mean that counsel should be permitted to represent party "in any proceedings before trial and after trial").

Attorney Norris took pains not to act as both an advocate and a witness in the same proceeding. The court conducted the hearing regarding the gift separately from the hearing to remove the executor. Ronald was represented by separate counsel at the hearing where Norris testified. In his testimony, Norris

---

[3] The rule reads:
> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

[4] When Sheryl objected to attorney Norris providing testimony, Sheryl did not know what information he would provide. She only assumed it would be favorable to Ronald. In *National Child Care, Inc. v. Dickinson*, the Iowa Supreme Court held a lawyer could testify in a similar circumstance. 446 N.W.2d 810, 812 (Iowa 1989) ("At the time of the ruling, there was nothing in the record to indicate what [the attorney's] testimony might be, other than the allegation by National that it would be adverse to his client's interests.").

did not offer a conclusion on whether the gift was legally sufficient. He only addressed the actions he took at Mervin's request. We do not find that Norris's conduct merited his removal as counsel for the estate.

**AFFIRMED.**